**Warren Eugene BRIDGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69468.**

Court of Criminal Appeals of Texas.

Oct. 15, 1986.

---

Richard Thornton, court appointed on appeal only, Galveston, for appellant.

Michael J. Guarino, Dist. Atty. and Jack C. Brock and Miguel Martinez, Asst. Dist. Attys., Galveston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for capital murder. V.T.C.A., Penal Code, § 19.03(a)(2). After finding appellant guilty, the jury returned affirmative findings to the special issues submitted under Article 37.071, V.A.C.C.P. Punishment was assessed at death. V.T.C.A., Penal Code, § 12.31.

Appellant does not challenge the sufficiency of the evidence to sustain the finding of guilt, but does advance a number of grounds of error. Appellant urges the trial court erred in overruling the motion to suppress his confession, erred in ordering a bifurcated voir dire examination of the jury panel in a capital murder case, erred in overruling and denying certain challenges for cause, erred in limiting questions by defense counsel on voir dire examination, erred in refusing to allow the co-defendant Costa to testify, erred in denying his special requested charge on punishment as to Special Issue No. 2, erred in refusing a mistrial motion based on improper jury argument and erred in allowing the testimony of two witnesses not on the original list of witnesses furnished by the State. Appellant also contends the evidence was insufficient to sustain the affirmative finding to Special Issue No. 2 at the penalty stage of the trial. In two grounds of error he further urges he was deprived of the effective assistance of counsel.

The indictment charged appellant with the murder of Walter Rose by shooting him with a handgun during the course of a robbery on or about February 10, 1980.

The record reflects that shortly before 1 a.m. on February 10, 1980 witnesses saw two white males run from the Stop 'N Go convenience store in Galveston where Walter Rose was a 11 p.m. to 7 a.m. duty employee. Witnesses found that Rose had been shot, was bleeding and sweating. One of the witnesses took Rose to the hospital. The police arrived and found the cash register open and a six pack of beer on the counter. It was determined that $24.00 was missing.

The 62–year–old Rose died on February 24, 1980. The medical examiner testified, after an autopsy, the cause of the death was complications from gunshot wounds. Rose had been shot four times. One bullet entered the sternum, knocking bone fragments loose and injuring the heart and lodging in the left lung. Another bullet entered the back, went through the spleen, stomach and liver. There were also separate wounds to the left wrist and left shoulder.

On February 20, 1980, at approximately 4:33 p.m. police officers executed a search warrant for narcotics at apartment 108 of the Surf Motel in Galveston where the 19–year–old appellant resided. While there the officers found a photo album with a newspaper clipping describing a shooting incident at a Stop 'N Go convenience store on February 10, 1980. After appellant was taken to the police station, he was questioned about the robbery-shooting and he confessed and gave a written statement which was introduced into evidence. Appellant stated therein that about 12:10 a.m. on February 10, 1980 he and Robert Costa left the Surf Motel to get some beer from the Stop 'N Go store at 710 Fourth Street. Costa had a .38 cal. revolver with him. Several blocks from the store appellant asked Costa if he was going to help with the rent, and Costa suggested that they "rob this store we are going to," and Costa gave the revolver to the appellant. After entering the store, Costa got a six pack of beer and took it to the counter. Appellant related he stood in front of Rose (whose name he later learned from the newspaper), and when Costa gave Rose three dollars and Rose opened the cash register he (appellant) shot Rose. Costa told appellant to shoot Rose again and he did. Costa took bills out of the register and threw the tray on the floor. Rose, still standing, threw a trash can at appellant, and appellant and Costa left. In their flight Costa ran into a steel pipe across the street and dropped the money. When they returned to the apartment and told Robert Beecher and "Spike" Spear, who also lived at the apartment, what they had done, Spear slapped Costa. Beecher took the weapon from the appel-

lant and left. When Beecher returned 30 minutes later, he did not have the .38 caliber revolver.

Ruth Cecares, who lived at the Surf Motel at the time, testified she was in the apartment where appellant resided on February 12 or 13, and that Lucretia Beecher, appellant's wife or girlfriend, had shown her a newspaper clipping about the robbery-shooting in question that had been placed in a photo album. In her presence appellant, referring to the store employee, stated "The old mother-fucker got smart" and that he had killed or wanted to kill the old man. Cecares did not report the matter to the police.

Edward Adams, a boat captain who had met appellant through Robert Beecher, testified that he visited in the apartment at the Surf Motel in early February, that Beecher showed him the newspaper clipping in question, and told him that Costa and appellant had committed the offense. Spear replied that if the man died he could get capital murder, and the appellant, who was present, said "There was no witnesses" and grinned. He added that he had emptied the gun at the old man. Adams did not report the matter to police as "I didn't want it to catch wind back to my boss that the people I was hanging around with, and everything, and lost my job, and everything."

Robert Beecher, a defense witness, testified that he, appellant, Costa and Spear spent the afternoon and evening of February 9, 1980, at the Surf Motel watching television and drinking beer, tequila and whiskey. About 10 p.m. or so the alcoholic beverages were depleted and Costa volunteered to go buy more beer and asked appellant to accompany him. Beecher testified Costa returned to the apartment in a few minutes and picked up Beecher's pistol on the mantle and left again. Several hours later, when Costa and appellant returned, appellant had the pistol. When they told Spear and Beecher what happened, Spear hit Costa. Beecher took the weapon from the appellant, and buried it on the beach. He later aided the police in its discovery. A .38 caliber casing found at

the convenience store was shown to have been fired by the weapon. Two slugs recovered could not be positively identified as having been fired by the weapon because of the condition of the weapon.

Appellant advances the contention the trial court erred in denying the motion to suppress his extrajudicial confession in violation of Article I, §§ 9 and 10 of the Texas Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

Initially appellant's counsel on appeal complains there is a discrepancy as to the date on which the motion to suppress hearing was held.[1] The hearing was held on August 22, 1980. The docket sheet entry on July 30 which apparently confused counsel on appeal related to a suppression hearing on evidence other than the confession. Actually the dates are immaterial. Counsel also contends that the findings of facts and conclusions of law by the trial court as required by Article 38.22, § 6, V.A.C.C.P., are not in the record. Counsel is mistaken. Such findings and conclusions finding the confession voluntary and admissible are in Volume I of the record at pp. 94–95.

Appellant argues that (1) appellant was not given his *Miranda*[2] warnings, (2) his request for counsel was not honored and (3) the confession was induced by threats, or promises not to file criminal charges against his wife depending upon the appellant giving a confession.

Jerry Roberts, Galveston Police Department Police Officer assigned to the Narcotics Division, obtained a search warrant on February 20, 1980, to search appellant's apartment at a Galveston motel for methamphetamines. On the same date he and other officers executed the search warrant. Appellant, two other males and three females, including appellant's wife or girlfriend, were at the motel room. Roberts testified that while at the motel room he did not abuse appellant and did not hear appellant request an attorney.

Sgt. Jerry Rice, Galveston Police Officer, got to the motel after the search had commenced. While there Rice did not hear any request by appellant or the other prisoners for an attorney. He did not see anyone abuse or coerce the appellant or others. He did not recall anyone saying anything about calling the welfare department to take the baby who was there with a young girl (apparently Lucretia Beecher, who appellant testified was his wife). He said it was possible because when a person with a child is taken into custody the child welfare is the "only outlet," but he did not recall such conversation nor did he hear anyone tell the appellant that Lucretia Beecher would be charged with a criminal offense and that the baby would be taken away.

Officer Rice and Detective Singleton transported appellant and Robert Costa to the police department. En route Rice gave appellant his *Miranda* warnings and appellant indicated he understood the warnings. No request for an attorney was made.

Detective Leo Singleton testified substantially as Rice had. He had arrived at the location with Rice. He did not see or hear anyone physically or mentally coerce appellant, and did not hear anyone tell appellant that his wife was going to be charged and the baby taken away. En route to the jail Singleton testified appellant was given his *Miranda* warnings and had stated he understood them. At no time did appellant ask for an attorney.

Detective Clifford Simmons was assigned to interview appellant at the police station. Simmons testified he again gave appellant his *Miranda* warnings, that he understood, that he had been previously convicted of a felony in Georgia, and indicated his willingness to discuss his involvement in the robbery and shooting of Walter Rose. Appellant admitted shooting and robbing Rose and gave a written statement voluntarily. Simmons testified that no coercion, threats or promises were made by him or anyone else to obtain the statement, and that appellant did not ask for an attorney.

1. See *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Article 38.22, V.A.C.C.P.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Lynette Ostemyer, a civilian dispatcher for the Galveston Police, testified she witnessed appellant's signature on the confession; that it was done voluntarily.

Appellant called Robert Beecher, brother of his girlfriend or common-law wife. Beecher related he arrived at the motel during the course of the search. He saw Costa and the appellant on the floor. Beecher recalled that Costa asked for or even demanded an attorney and that Officer Roberts jumped up and down on Costa's back. He heard appellant also ask to see an attorney and an unidentified officer told appellant "not to worry about it," and an unnamed officer was flipping a knife over appellant's head. Beecher stated Officer Hanson told appellant to tell the officers who was involved in the robbery or his wife would be charged and the baby taken away.

Appellant testified at the suppression hearing. He said he and Costa were placed on the floor during the search, that his knife was taken from him, and that an unidentified officer was flipping a knife over his head. Costa asked for a lawyer and that he, too, requested one and was told to shut up. He testified that he was told at the scene that if he gave a statement his wife would not be charged, and his baby, Michael, would not be taken away. He admitted he understood the admonishments and warnings given him, and that no one physically or mentally abused him.

■ The trial court found the appellant was duly and properly warned of his rights, that the confession was freely and voluntarily given, and was admissible into evidence. The court expressly found that appellant was not promised that in return for a statement his wife and child would be released from custody,[3] that the appellant

was not threatened prior to the confession by an officer opening and closing a knife in close proximity to the appellant. The trial court did not make an express finding as to the claimed request for counsel. It did expressly find from the evidence appellant was not induced or caused to give the confession by threats, persuasion, compulsion, intimidation, violence, promises "or anything else other than the free and voluntary act of the defendant." The trial court rejected appellant and Beecher's testimony on the other matter and it is clear it also rejected their testimony on the issue of request for counsel which was contradicted by all the officer-witnesses. "One of the two versions simply did not happen." *Wicker v. State,* 667 S.W.2d 137, 141 (Tex. Cr.App.1984). The trial court was the sole judge of the credibility of the witnesses at the hearing and was entitled to disbelieve appellant's version. *Wicker,* supra, at 141; *Rumbaugh v. State,* 629 S.W.2d 747, 752 (Tex.Cr.App.1982). See also *Cannon v. State,* 668 S.W.2d 401 (Tex.Cr.App.1984). The court may believe or reject all or any part of a witness' testimony. The evidence supports the trial court's decision to admit the confession into evidence. Appellant's ground of error is overruled.

■ Appellant contends the trial court erred in sua sponte ordering a bifurcated voir dire examination of the jury panel in this capital murder case.

Appellant's counsel filed a motion to examine each prospective juror on voir dire individually and apart from the jury panel for the case as is normally done in capital murder cases. The motion was granted. Several days later when the trial commenced the trial court expounded on certain general principles of law to the jury panel. See Article 35.17(2), V.A.C.C.P. Prospective jurors were then examined separate and apart on questions concerning

---

3. At the trial on the merits the issue of the voluntariness of the confession was again vigorously urged before the jury. There it was established that Officer Roberts had instructed Officer Maffei, during the course of the search, to call the Child Welfare Department to be on standby to take custody of a child. The telephone call was made from the motel apartment and could possibly have been overheard. The officers testified that this was routine procedure where there is a possibility that a parent or parents will be taken into custody, and there is no one else with whom to leave the child. The child, Michael, stayed with his mother and another woman when they were taken to the police station. Later the officers decided not to file narcotic charges against any of the three women found in the apartment.

the death penalty. Those who were not excused were returned to the jury panel. Thereafter the "panel" composed of those qualified on the death penalty were interrogated by the attorneys as a group on non-death penalty issues. When this latter part of the voir dire examination was completed, the trial court called the name of the prospective jurors in order, passing each juror for acceptance or challenge first to the State and then to the appellant. See Article 35.13, V.A.C.C.P. To this procedure there was no objection by the appellant.

Appellant's counsel on appeal asserts he has been involved in 89 capital cases and could not recall any such procedure as here utilized, referring to the same as "weird, uncalled for and illegal voir dire," for which no objection should be necessary.

Appellant relies upon *Grijalva v. State*, 614 S.W.2d 420 (Tex.Cr.App.1980), and *Pierson v. State*, 614 S.W.2d 102 (Tex.Cr.App.1980), for the proposition that in a capital case each party must exercise peremptory challenges when the juror is qualified, and not at the conclusion of the voir dire examination as in non-capital felony cases. *Grijalva* and *Pierson* are distinguishable on the facts. Further, here the parties were not called upon to exercise their peremptory challenges until after the latter phase of the voir dire examination when the prospective jurors held to be qualified both as to death penalty and non-death penalty issues.

It must be remembered that the trial court has wide discretion over the course of the voir dire examination of the jury panel. *Smith v. State*, 683 S.W.2d 393, 401 (Tex.Cr.App.1984); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976); *Abron v. State*, 523 S.W.2d 405 (Tex.Cr.App.1975). Further, the appellant failed to object to the procedure utilized and waived the error, if any. See and cf. *Stewart v. State*, 686 S.W.2d 118 (Tex.Cr.App.1984); *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.1980), cert. den., 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251. Appellant's ground of error is overruled.[4]

In still another ground of error appellant contends the trial court erred in limiting his voir dire examination of the prospective jurors as to their "knowledge of the effect of answers to the death penalty in violation of Article (sic) 12.31(b) Penal Code, Article 37.071, Code of Criminal Procedure, as amended...." He also complains violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 9 and 10 of the Texas Constitution.

Appellant's brief states that "this" has to do with the State's motion in limine granted by the court. The motion in limine requested that before defense counsel made inquiry of prospective jurors on certain matters, that defense counsel be first required to approach the bench and permit the court to rule on the propriety of the particular inquiry out of the jury's hearing. The matters referred to in the motion were:

"Any statement, question, or reference to the effect that jurors in the trial of a capital murder case should consider and be affected by the penalty to be imposed in answering the issues on punishment.

"Any statement, question, or reference to the effect that jurors in the trial of a capital murder case should impose a higher burden of proof beyond a reasonable doubt."

4. Appellant's counsel on appeal states that the lapse of two weeks between individual voir dire examination and group voir dire examination would hamper "any trial counsel" in making peremptory challenges. Appellant does not assert and show how he was harmed, how he would have exercised his peremptory challenges differently, and that a jury he did not want was impaneled as a result of the procedure followed to which he offered no objection. See *Sanne v. State*, 609 S.W.2d 762, 767 (Tex.Cr.App.1980). In *Sanne*, supra, the defendant made the complaint that he was deprived of equal protection of the laws and due process because he was required in a capital case to exercise peremptory challenges when examining prospective jurors individually instead of exercising peremptory challenges after the examination of all necessary prospective jurors on the panel as normally done in non-capital cases. *Sanne* held the defendant did not establish that he would have exercised his peremptory challenges differently had he been permitted to do so, and that a jury he did not want was impaneled. See also *Payton v. State*, 572 S.W.2d 677 (Tex.Cr.App.1978).

The motion was granted, but only required a bench conference before certain inquiries. Appellant fails to point out in the record where during the voir dire examination he was limited in his interrogation by virtue of the motion in limine or otherwise. Appellant does not point out how there were violations of the constitutional or statutory provisions noted or when they occurred. He does cite *Brock v. State*, 556 S.W.2d 309 (Tex.Cr.App.1977), and *Burks v. State*, 583 S.W.2d 389 (Tex.Cr.App.1979), without argument. *Brock* and *Burks* basically stand for the proposition that prospective jurors may not be disqualified alone under V.T.C.A., Penal Code, § 12.31(b), when they have not been disqualified under the standard announced in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). See now *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

Appellant has not shown any error.

In another ground of error appellant contends the "trial court erred in overruling and denying challenges for cause as to juror Jeffcoat, juror Schultz, juror Richards, juror Gallaway, and juror Hall."

The ground is multifarious and with the exception of juror Jeffcoat the appellant does not point out where in the record the complained of action is recorded. The given names of the prospective jurors are not mentioned. With regard to "juror Schultz, juror Richards, juror Gallaway and juror Hall" appellant contends they "were challenged by the State inappropriately" as each was somewhat equivocating in their responses to questions about answers to special issues as well as the death penalty.

We find that no "juror Richards" was interrogated on voir dire examination. We do find the name of a James C. Richards who was interrogated, but he was not challenged for cause by either party.

As to juror Hall, we find that the court overruled the State's challenge for cause. The claim with regard to Hall appears frivolous.

Juror Gallaway was challenged by the appellant, not by the State. Early on Gallaway told the prosecutor she believed that if a person killed somebody else intentionally, "then they themselves deserve capital punishment." Appellant was unable, on voir dire, to show that such belief would impair her functions as a juror. Although she felt strongly about her personal beliefs, she stated she could answer questions of guilt or innocence and the special punishment issues without regard to her personal beliefs.

Gallaway was passed back and forth between the parties during voir dire examination. Finally she was asked by the appellant whether her personal feelings were so strong that she might not be able to follow an instruction of the court. The record then reflects:

"A. Well, if the court had instructed me, I would have to follow it, wouldn't I?

"Q. (Defense Counsel) I think a lot of people would have to try, yes, ma'am. But I am not sure everybody can because of their personal convictions.

"A. I think I could, in spite of my personal convictions.

"Q. (Defense Counsel) That is a fair answer."

Appellant challenged for cause on the ground that Gallaway had given conflicting answers as to what she could and could not do. The challenge was overruled, and appellant exercised a peremptory challenge against Galloway. Although appellant exercised all of his peremptory challenges, he did not ask for any additional peremptory challenges for the purpose of striking another venireman unacceptable to him because of an improper ruling or rulings on challenges for cause. The record does not show the additional peremptory challenge or challenges would not have been given by the court if requested. The error, if any, was not preserved for review. *Williams v. State*, 565 S.W.2d 63, 65 (Tex.Cr.App.1978); *Adami v. State*, 524 S.W.2d 693, 700 (Tex. Cr.App.1975).

Prospective juror Schultz stated she did not believe in the death penalty and that she would automatically vote against the death penalty regardless of the facts. Ap-

pellant did not attempt to rehabilitate Schultz, but questioned her about her friendship with a member of the Sheriff's office. The court, without objection from appellant, granted the state's challenge for cause.

■ This Court has consistently held that the failure to object to the alleged improper exclusion of a prospective juror in a capital murder case waives error, even constitutional error, *Boulware v. State,* 542 S.W.2d 677 (Tex.Cr.App.1976); *Russell v. State,* 598 S.W.2d 238 (Tex.Cr.App.1980); *Crawford v. State,* 617 S.W.2d 925 (Tex.Cr. App.1980), cert. den., 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 431 (1981); *Stewart v. State,* 686 S.W.2d 118, 120 (Tex.Cr.App. 1984); see also *Selvage v. State,* 680 S.W.2d 17, 25 (Tex.Cr.App.1984).

■ Even if error had been properly preserved, Schultz stated unequivocally she did not believe in the death penalty, and that she would vote against the imposition of the death penalty regardless of the facts. Schultz thus would have disqualified even under the strict standard of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), reaffirmed the standard of *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), and abandoned the stricter standard of *Witherspoon.* The court did not err in excluding prospective juror Schultz. See *Bird v. State,* 692 S.W.2d 65, 75 (Tex.Cr.App.1985); *Ex parte Russell,* 720 S.W.2d 477 (Tex.Cr. App.1986).

This leaves prospective juror Jeffcoat. Appellant did challenge Jeffcoat for cause. At the conclusion of the voir dire examination and before the exercise of the peremptory strikes appellant withdrew his challenge for cause to Jeffcoat, and the court dictated the withdrawal into the record and had the same confirmed by appellant's counsel. The challenge for cause or objection having been withdrawn, nothing is presented for review. *Harrington v. State,* 547 S.W.2d 616, 620 (Tex.Cr.App. 1977). Appellant's ground of error is overruled.

Appellant contends the trial court erred in permitting, over objection, the testimony of Ruth Cecares and Officer Maffei during the guilt stage of the trial.

Appellant's counsel argues that the names of these two State's witnesses were not on the list of State's witnesses furnished them when appellant's discovery motion was granted on July 30, 1980, in this respect.

■ If a witness, whose name is not on a witness list furnished the defendant, is permitted to testify the standard of review is whether the trial court abused its discretion in allowing such witness to testify. Factors to be considered in determining whether an abuse of discretion has occurred include whether the prosecutor in bad faith failed to disclose, ahead of time, the name of the witness. *Hightower v. State,* 629 S.W.2d 920, 925 (Tex.Cr.App. 1982), and cases there cited. See also *Veloz v. State,* 653 S.W.2d 918, 922 (Tex.App. —Corpus Christi 1983). Cf. *Lincoln v. State,* 508 S.W.2d 635, 637 (Tex.Cr.App. 1974).

The record reflects that as a result of a hearing on a pre-trial motion held on a Friday the State learned of the existence of a potential witness who had been a neighbor of the appellant. The next Monday (August 25, 1980), when the trial on the merits commenced, a district attorney's investigator learned of the whereabouts of Ruth Caseres, the neighbor. That same morning the appellant was given her name as a potential witness. At the noon recess Caseres was interviewed by the State. It was learned that the appellant had made damaging admissions to her. That afternoon Ruth Caseres was called as a State's witness. Appellant objected because she was not on the original witness list and he was "surprised" and unable to prepare a cross-examination and rebuttal. There was no claim of bad faith on the part of the prosecutor. Before ruling that Caseres could testify, the court offered appellant's counsel a recess in order that he might talk to the witness before she testified. The offer was declined, with counsel stating, "I

am not even sure a recess to prepare cross-examination would cure the problem." After the objection was overruled, the court offered and appellant accepted an offer to recess after the witness had testified on direct examination. However, appellant proceeded to cross-examine upon completion of the direct examination without taking the offered recess.

The next day (August 26, 1980) appellant objected to Officer Maffei's testimony because his name was not on the witness list stating he was surprised and would be unable to adequately cross-examine and rebut the witness' testimony. Appellant also objected that he had been unsuccessful in attempting to subpoena Maffei for the pretrial hearing on the motion to suppress the confession the previous Friday.

The court offered appellant's counsel "an opportunity to talk with and examine Mr. Maffei at this time at any length you desire." The offer was declined. The objection was overruled.

On the previous Friday and as the result of allegations and testimony at the suppression hearing, the State orally informed the appellant Maffei would be called as a witness at the trial. His name was furnished in writing on Monday, and he was called to testify on Tuesday because the State considered him a material witness on the issue of the voluntariness of the confession before the jury.

■ Another factor to be considered in determining whether there was an abuse of discretion is whether the defendant can reasonably anticipate that the witness would testify despite the absence of his name on any witness list. *Smith v. State*, 540 S.W.2d 693 (Tex.Cr.App.1976). It would appear that appellant could have reasonably anticipated Officer Maffei's testimony at trial after the suppression hearing was concluded.

■ We find no abuse of discretion in permitting either witness to testify for the State. *Hightower v. State, supra*. The ground of error is overruled.

Next, appellant urges the trial court erred in refusing to permit the co-defend-ant to testify before the jury in violation of appellant's rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, §§ 9 and 10 of the Texas Constitution.

The co-defendant, Robert Costa, was called as a defense witness. In response to the State's motion in limine he first testified outside the presence of the jury. Costa stated his lawyer advised him to take the "Fifth" since he had "a charge under appeal right now" and not to give any information except his name. He steadfastly refused to answer any questions propounded by appellant's counsel, personally claiming his right against self-incrimination. Nevertheless, appellant's counsel sought to call Costa as a witness before the jury "for the sake of the record" and have him claim his privilege against self-incrimination. The trial court refused the request.

■ It has been repeatedly stated that a defendant has no right to have a witness assert or invoke his Fifth Amendment privilege against self-incrimination in the presence of the jury. *Ellis v. State*, 683 S.W.2d 379, 382 (Tex.Cr.App.1984); *Mendoza v. State*, 552 S.W.2d 444 (Tex.Cr.App.1977); *Victoria v. State*, 522 S.W.2d 919 (Tex.Cr.App.1975); *Rodriquez v. State*, 513 S.W.2d 594, 596 (Tex.Cr.App.1974). It has also been held that an individual's constitutional privilege against self-incrimination overrides a defendant's constitutional right to compulsory process of witnesses. *Ellis*, supra, at 383; *Grayson v. State*, 684 S.W.2d 691, 696, note 2 (Tex.Cr.App.1984); *Glasper v. State*, 486 S.W.2d 350 (Tex.Cr.App.1972).

Appellant's reliance upon *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), is misplaced for the same reasons discussed in *Rodriquez*, supra. Appellant's ground of error is overruled.

Appellant contends the trial court erred in refusing to grant a motion for mistrial "made during the argument of State's counsel on guilt-innocence."

In his multifarious argument under such contention appellant urges the prosecutors,

Guarino and Brock, in their arguments referred to "burglary is a crime of violence," and that Brock stated, "nothing to admit according to the defendant." Reference is made to "page 69, the Statement of Facts." Appellant asserts both the objection and motion for mistrial were made and overruled. Appellant argues burglary is not a crime of violence, *Tew v. State*, 551 S.W.2d 375 (Tex.Cr.App.1977), and the latter argument by prosecutor Brock was a comment on the appellant's failure to testify. *Bird v. State*, 527 S.W.2d 891 (Tex.Cr.App.1975).

The State asserts the citation to the record is incorrect, and there was no objection or motion for mistrial made by appellant during the State's jury argument at the guilt stage of the trial. The State urges that since the record does not support the ground of error it should be overruled. *Beck v. State*, 573 S.W.2d 786, 788 (Tex.Cr.App.1978).

In *Cook v. State*, 611 S.W.2d 83, 87 (Tex. Cr.App.1981), this Court stated:

"This court with its tremendous caseload should not be expected to leaf through a voluminous record hoping to find the matter raised by appellant and then speculate whether it is that part of the record to which appellant had reference."

Like the State, we have found no objection or mistrial motion made during the State's jury argument at the guilt stage of the trial. A page by page examination reveals at p. 659 the argument of prosecutor Brock at the guilt stage of trial that

"There is nothing to admit, according to the Defendant, as we know from the testimony of Beecher (a defense witness) at the time of the trial ...

"MR. JOHNSON (Defense Counsel): May we approach the bench?

"THE COURT: Yes, sir.

(Whereupon, an off the record discussion was held)

"MR. BROCK: According to the Defense up until the time of that trial Beecher's statement had been according to the letter of Mrs. Mathis that Costa had the gun when he returned...."

Whether this is the argument to which appellant has reference is not clear from his brief. There was, however, no recorded objection or motion for mistrial on the ground that appellant now urges on appeal. Nothing is presented for review.

An examination page by page of the argument at the penalty stage of the trial, not the guilt stage, shows at page 789 that District Attorney Guarino argued:

"Look at the record of the three burglaries he has committed, and I submit to you, Ladies and Gentlemen, those burglaries, that is violence. That is violence upon your community, and upon our society."

The district attorney then asked the jury to look at how appellant beat Lucretia (appellant's wife or girlfriend), to look at the retaliation against persons in a bar over the stabbing of an individual, shooting aimlessly at people and at the facts surrounding the "cold-blooded murder of Mr. Rose (deceased)."

To this argument there was no objection or motion for mistrial. Whether this is the argument appellant meant to refer to is not clear. The ground of error does not comply with Article 40.09, § 9, V.A.C.C.P. Nothing is presented for review.

Appellant contends the trial court erred in refusing his special requested charges at the penalty stage of the trial. Appellant requested the court to instruct the jury that there was "a presumption that conduct of the defendant that caused the death of the deceased was not committed deliberately and with reasonable expectation that the death of the deceased or another would result" and that there was "a presumption that there is no probability that a defendant would commit criminal acts of violence that would constitute a continuing threat to society."

The special requested charges were denied by the trial court. Obviously they were designed by appellant to be given in connection with the submission of Special Issues Nos. 1 and 2 under Article 37.071, V.A.C.C.P. Appellant has cited no authority to support his contention stating only the special requested charges " ... in our

opinion, should have been granted." The State asserts it has found no basis in the law for the requested instructions. The burden of proof is on the State beyond a reasonable doubt, but we know of no such presumptions as included in the requested charges. The ground of error is overruled.

■ Appellant challenges the sufficiency of the evidence to sustain the affirmative answer of the jury to Special Issue No. 2 submitted under Article 37.071(b)(2), V.A. C.C.P. Appellant urges the State offered "no evidence of probative force" to support the answer that he would commit criminal acts of violence that would constitute a continuing threat to society.

The facts in the instant case show that after spending an afternoon and evening watching television and drinking beer, tequila and whiskey, the 19–year–old appellant and his companion, Robert Costa, went armed to a local Stop 'N Go convenience store. When the 62–year–old Walter Rose was "ringing up" a beer sale to Costa, the appellant shot Rose four times, once in the chest, arm, wrist and in the back. The murder-robbery netted appellant and Costa $23.00 or $24.00. Thereafter he admitted the robbery at the store and laughed and stated to a neighbor (Caceres) "The old mother-fucker got smart" and that he killed or wanted to kill the old man. The record shows that appellant displayed no remorse for his participation in a cold-blooded and senseless killing. Edward Adams testified when discussing the robbery-shooting appellant stated there were no witnesses and grinned; that he had emptied his gun on the old man.

This Court has frequently held that the circumstances of the offense itself (the capital murder charged) and the facts surrounding it can sustain an affirmative answer to the second special issue under Article 37.071, supra, if they are severe enough. *Turner v. State,* 698 S.W.2d 673, 675–76 (Tex.Cr.App.1985); *Thompson v. State,* 691 S.W.2d 627, 632 (Tex.Cr.App.

1984); *Green v. State,* 682 S.W.2d 271, 289 (Tex.Cr.App.1984); *Mitchell v. State,* 650 S.W.2d 801, 812 (Tex.Cr.App.1982). "Indeed, the circumstances of the offense and the facts surrounding it may furnish greater probative evidence than any other evidence regarding the second special issue submitted at the penalty stage of a capital murder case." *Russell v. State,* 665 S.W.2d 771, 781 (Tex.Cr.App.1983). See also *Hawkins v. State,* 660 S.W.2d 65 (Tex. Cr.App.1983); *Williams v. State,* 668 S.W.2d 692 (Tex.Cr.App.1983).

Apart from the circumstances of the instant offense, the State introduced appellant's 1979 Georgia conviction for burglary on three counts.[5]

Three Georgia law enforcement officials testified that appellant's reputation for being a peaceful and law-abiding citizen was bad. Georgia Probation Officer Carl Dervan testified that appellant escaped from his custody in Georgia less than a month before the instant offense in Texas.

The evidence reflects also that when a search warrant was executed at appellant's apartment which resulted in his arrest the officers found a "kitchen lab" used to manufacture methamphetamine. At the time Sergeant Rogers observed "tracks" or beginning of "tracks" on appellant's arm "like most people that use 'speed' would get."

Caceres, the neighbor, testified appellant manufactured and sold methamphetamine to pay the rent when "the girls wouldn't go out on the street." On two occasions Caceres saw appellant beat his "wife" because she did not want to go out on the street.

Edward Adams, who used drugs with appellant, testified appellant sold homemade speed. Adams heard appellant ask Robert Beecher for his gun so he could go shoot some "Niggers." Adams had heard them discuss the fact that appellant had gone with Beecher to Texas City where Beecher had shot in a crowd of black peo-

---

5. "[T]hough burglary is not *necessarily* a violent crime against a person, it is certainly pregnant with that potential; in retrospect appellant's commission of a burglary in 1963 may have been a harbinger." *King v. State,* 631 S.W.2d 486, 503 (Tex.Cr.App.1982). (Emphasis in original.)

ple to avenge a stabbing in a drug deal that had gone "bad."

After being arrested and charged with the instant capital murder, appellant escaped from the Galveston County jail with two others. A hole was found in the outside wall of the jail on the third floor. Appellant was apprehended the next morning by a detective. Before his apprehension, after his escape, appellant and another escapee, Baker, were observed by a police officer "casing" a Seven-Eleven convenience store where a woman clerk was working alone.

During the trial appellant's counsel had elicited from Robert Beecher that he had forced the 19–year–old appellant to drink whiskey on the evening before the fatal shooting; that the appellant was easily led and subject to suggestion and domination by others; that Costa had returned for the revolver after he left the apartment with appellant; that according to Costa's version of the shooting related to Beecher, Costa had told the appellant during the robbery to "waste him," "waste him," referring to the deceased. Beecher stated that when the appellant returned on the night in question he was crying. After appellant's Georgia probation officer testified appellant's reputation for being a peaceful and law-abiding citizen was "bad," his counsel elicited, on cross-examination, that appellant did not have a reputation for violence.

Appellant cites *Hartfield v. State*, 645 S.W.2d 436 (Tex.Cr.App.1983), and *Roney v. State*, 632 S.W.2d 598 (Tex.Cr.App.1982), to support his claim of insufficient evidence to support the evidence to the second special issue. Reliance upon *Hartfield* is misplaced because that case did not involve sufficiency of evidence to support the answers to special issues submitted under Article 37.071, supra. In *Roney* punishment was reformed from death to life imprisonment in a case where the defendant did not have a prior criminal record, voluntarily surrendered himself to police, repeatedly claimed he had to kill to defend himself, and was "an agitated and some-

what distressed individual." *Roney* is distinguishable on its facts.

Viewing the evidence in the light most favorable to the jury's finding to the second special issue, see and cf. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983) (opinion on rehearing), we find the evidence sufficient to support the affirmative finding as the second special issue under Article 37.071, supra. *Carter v. State*, 717 S.W.2d 60 (Tex.Cr.App.1986).

In his first and last grounds of error appellant complains of the ineffective assistance of trial counsel. In his first contention appellant complains the trial court erred in appointing two lawyers, not versed in criminal law as co-counsel for him approximately two weeks before trial depriving him of the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments, United States Constitution, and Article I, §§ 9 and 10, Texas Constitution.

The offense occurred on February 10, 1980. It is asserted that appellant was originally jointly indicted with Robert Costa on February 28, 1980, for the instant offense, that he was reindicted individually for the same offense on July 22, 1980, that on July 23, 1980 attorneys Ronald Gipson and Elmo Johnson were appointed to represent appellant, that the jury selection began on August 5, 1980, and the trial on the merits commenced on August 25, 1980. Appellant's counsel on appeal acknowledges that attorney Bruce Fort, a board certified specialist in criminal law, had been previously appointed to represent appellant, but had been apparently relieved. Appellant's counsel asserts that the State Bar of Texas records do not reflect that Gipson and Johnson were certified as specialists in criminal law by the Board of Specialization, that legal directories, outside the appellate record, reflect that attorney Gipson is associated with a civil law firm whose principal clients are an insurance company and the Moody Foundation, and attorney Johnson is a tax attorney. It is argued that Gipson and Johnson "although very fine, compe-

tent lawyers, were principally civil lawyers, not well-versed in criminal law matters. * * These two very fine lawyers did an excellent job in the representation of Petitioner (appellant), although they were amiss in certain matters which would have been obvious to a lawyer well-versed in the field of criminal law. Nevertheless, in the short time allowed, said counsel did, as hereinbefore described, a fantastic job in pre-trial work in the two (2) week period intervening before the commencement of trial against Petitioner (appellant)."

Appellant does not claim a violation of the 10 day preparation period provided by Article 26.04, V.A.C.C.P., and the State notes that the formal order appointing Gipson and Johnson was only a formal order, that a pre-trial motion and a later colloquy at the bench showed that Gipson had an earlier association with the case prior to any formal appointment order. The State contends that the record does not support any assertion in appellant's brief that the appointed counsel were only civil lawyers and were not well versed in criminal law.

In his last ground of error appellant lists, without reference to the record, seven instances which he claims demonstrate ineffective assistance of counsel. These shall be considered.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-pronged test to determine the ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient and not "reasonably effective." After this criteria has been established, the defendant must secondly show that the deficient performance prejudiced the defense. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, supra, 104 S.Ct. at 2064.[6]

The *Strickland* test has been adopted in Texas. *Butler v. State*, 716 S.W.2d 48

(Tex.Cr.App.1986); *Hernandez v. State*, 726 S.W.2d 53 (Tex.Cr.App.1986).

It has frequently been said that a defendant in a criminal case is entitled to reasonably effective assistance of counsel. *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App. 1980); *Ingham v. State*, 679 S.W.2d 503 (Tex.Cr.App.1984); *Moore v. State*, 700 S.W.2d 193 (Tex.Cr.App.1985); *Butler v. State, supra.*

This standard has never been interpreted to mean that the accused is entitled to errorless or perfect counsel, *Moore*, supra, at 205; *Jackson v. State*, 726 S.W.2d 555 (Tex.Cr.App.1985). Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination. *Moore v. State, supra; Smith v. State*, 676 S.W.2d 379 (Tex.Cr.App.1984); *Meanes v. State*, 668 S.W.2d 366 (Tex.Cr.App.1983), cert. den. 466 U.S. 945, 104 S.Ct. 1930, 80 L.Ed.2d 476; *Bolden v. State*, 634 S.W.2d 710 (Tex.Cr.App.1982); *Johnson v. State*, 629 S.W.2d 731 (Tex.Cr.App.1981).

In determining whether counsel has provided effective assistance, a court looks to the totality of the representation. *Smith v. State, supra; Romo v. State*, 631 S.W.2d 504 (Tex.Cr.App.1982); *Simmons v. State*, 629 S.W.2d 38 (Tex.Cr.App.1981). Furthermore, the "totality of the representation" test is to be applied as of the time of trial, and not through hindsight. *Butler v. State, supra; Hawkins v. State*, 660 S.W.2d 65, 75 (Tex.Cr.App.1983).

Turning to the claimed instances of ineffective assistance of counsel in the last ground of error, we observe that first appellant asserts that no motion for continuance was filed. This claim was not briefed nor developed any further than generally mentioned in connection with the first

6. The standard "for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, supra, 104 S.Ct. at 2064.

ground of error—that attorneys not well versed in criminal law could not have been ready within the time between appointment and trial. Appellant makes no effort to show how failure to move for continuance resulted in ineffective assistance of counsel. Appellant does not contend and the record does not show unpreparedness.

■ Secondly appellant states that on numerous occasions during the voir dire of the jury his defense counsel failed to object to the pro tanto acceptance by the court of "certain jurors" on individual voir dire examination. The individual voir dire examination of prospective jurors consists of over 2,000 pages. Appellant does not identify by name or page in the record what "certain jurors" he has in mind. This claim presents nothing for review. *Cook v. State*, 611 S.W.2d 83, 87 (Tex.Cr.App.1981).

Appellant's third contention in his last ground of error was that counsel failed to object to the bifurcated voir dire examination of the jury panel in a capital murder case. This matter has been discussed earlier. While the traditional practice might have been the better practice, there was substantial compliance with Article 35.13, V.A.C.C.P. The failure to object was not a deficient performance of counsel.

Appellant's fourth contention is that appointed trial counsel failed to challenge the search warrant and the fruits of the search. Appellate counsel overlooks the fact that trial counsel filed a motion to suppress the fruits of the search. The motion was heard and overruled.

Appellant's fifth contention reads: "(5) ... delay made by defense counsel in objecting to the jury arguments of Messers Brock and Guarino, State's Attorneys, as heretofore addressed." Nowhere in his brief does appellant refer us to where the "delayed" objection may be found. The matter of jury argument has been previously discussed. Nothing is presented. *Cook v. State, supra.*

Appellant's sixth contention concerns the failure to request a jury charge on an accomplice witness. Accomplice witness testimony was not introduced. The so-called accomplice witness referred to, Robert Costa, did not testify. Counsel could not be declared ineffective for failure to object or request a charge under the circumstances.

■ Appellant's seventh and final claim under the last ground of error is that his counsel "failed to object to the lack of recordation of excuses and further, agreeing to the absence of Defendant during such excuses." Here again we are not referred to any portion of the record nor any argument advanced in connection therewith. The State urges the contention is outside the record. A close examination of the record reflects that prior to arraignment the record reflects counsel stated to the court:

"MR. JOHNSON (Defense Counsel): I think the Defendant should be arraigned and present when we begin the voir dire of the jury, but not for the purposes of excuses."

Although the trial judge noted that "there will be a record made" of the hearing on juror excuses, no such recordation is before this Court in the appellate record, if such hearing was held.

Article 33.03, V.A.C.C.P. (Presence of Defendant), provides in part:

"... when the record in the appellate court shows that the defendant was present at the commencement or any portion of the trial, it shall be presumed in the absence of all evidence in the record to the contrary that he was present during the whole trial...."

Here the record shows the appellant was present at arraignment and at trial, and there is no evidence to rebut the presumption that he was present during the whole trial.

Here counsel only suggested that appellant need not be present during hearing on jury excuses. The record does not show the court approved the suggestion or that appellant was not present if, in fact, such hearing was held. Such contention as here advanced does not reflect ineffective assistance of counsel under the circumstances presented.

Appellant's trial counsel filed numerous pre-trial motions showing their grasp of criminal trial procedure. Counsel filed motions to suppress the confession and the evidence seized in the search of appellant's apartment by virtue of a search warrant for narcotics and obtained hearings thereon. They filed three motions to quash and set aside the indictment, motions for discovery and depositions. The court granted their motions to shuffle the names of the prospective jurors, to each one individually and to require the State to reveal any agreements or concessions with State's witnesses, to require the State to reveal exculpatory evidence, etc.

The record also reveals counsel conducted a thorough voir dire examination and at trial effectively cross-examined and made objections. The issue of the voluntariness of the confession was raised again before the jury. Counsel displayed a working knowledge of the facts surrounding the case. More could be written, but it cannot be said that the two-prong test of *Strickland v. Washington, supra,* has been met. Appellant was not deprived of the effective assistance of counsel.

The judgment is affirmed.

CLINTON, J., dissents.