

## NUMBER 13-17-00473-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

DAVID CANTU JR.,                                                 Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

### On appeal from the 105th District Court
### of Kleberg County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Chief Justice Valdez

The trial court revoked appellant David Cantu's community supervision and sentenced him to eighteen years' imprisonment in the Texas Department of Criminal Justice. Cantu filed a motion for new trial and motion to reconsider punishment, claiming

ineffective assistance of counsel.[1]  The trial court denied Cantu's motions.  By one issue, Cantu contends his trial counsel failed to investigate mitigating evidence and witnesses in preparation of the motion to revoke hearing.  We affirm.

## I.  BACKGROUND

Cantu was charged with the offense of possession of a controlled substance for an incident alleged to have occurred on March 21, 2013 in Kleberg County, Texas. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West, Westlaw through 2017 1st C.S.). On December 12, 2013, through an order of deferred adjudication in the district court, Cantu was placed on community supervision for a term of four years for the offense of possession of a controlled substance.

On October 7, 2014, the State's first motion to revoke alleged that Cantu violated the conditions of community supervision.[2]  On February 23, 2015, the trial court modified and continued Cantu's community supervision.

The State's second motion to revoke was filed on April 5, 2017, which alleged that Cantu violated his modified community supervision on seven counts.  The State abandoned two of the seven counts against Cantu during a hearing held on July 14, 2017. The trial court found count three to be untrue and counts four through seven to be true.[3]

---

[1] During the motion for new trial hearing, Cantu limited his motion for new trial to punishment only. Cantu now appeals the trial court's denial of his motion for new trial to punishment only.

[2] The alleged violations of community supervision included failing to report with his supervision officer, using a controlled substance, and consuming alcohol.

[3] Count three was for reckless driving. Counts four through seven included tampering with evidence, failure to not possess firearms, failure to observe daily curfew, and failure to avoid injurious or vicious habits and/or avoid the unlawful use of drugs, narcotics, or any other controlled substance.

2

The trial court granted the State's second motion to revoke and sentenced Cantu to eighteen years' imprisonment.

On August 14, 2017, Cantu filed a motion for new trial and a motion to reconsider punishment claiming ineffective assistance of counsel. The trial court held a hearing on the motions on September 15, 2017.

At the beginning of the hearing, counsel for Cantu indicated that the motion for new trial was limited to punishment only. Cantu argued that his trial counsel had not conducted the proper investigation to offer mitigating evidence at the punishment stage of the motion to revoke hearing. In support of his argument, Cantu called on several witnesses to demonstrate deficiency of his trial counsel.

Cantu first called Luke Thompson, an investigator with Jim Wells County Sheriff's Department, to testify. Thompson knew Cantu on a professional and personal level. Cantu assisted Thompson with his investigation on a theft case. Thompson believed Cantu to be a trustworthy person. Thompson stated that Cantu had provided lawn care service for both him and for his great aunt and uncle. On cross-examination, Thompson revealed that he would not have hired Cantu to service his lawn or referred Cantu to his great aunt and uncle if he had known that Cantu was still affiliated with the criminal street gang, Latin Kings, or if it were true that Cantu had supplied guns for a murder.[4]

Cantu called Eddie Smith, Cantu's pastor, to testify. Smith knew Cantu, because Cantu and his wife came to Smith for spiritual counseling. Smith stated that Cantu wanted to make a change in his life. Cantu told Smith that he and his wife had quit the Latin

---

[4] Lieutenant Jaramillo of the Alice Police Department testified that Cantu was involved in a murder investigation that included two rival gangs, Latin Kings and Raza Unida. Cantu was suspected of supplying guns for a murder but was never charged. According to Lieutenant Jaramillo, Cantu cooperated with the murder investigation.

3

Kings. Smith said that Cantu was a hard worker who provided lawn care service for his church. Smith believed that Cantu had made a legitimate commitment to change his life. Smith stated he was a good judge of character. On cross-examination, Smith admitted that he was not a perfect judge of character and that he had been fooled by people in the past. Smith indicated that his opinion of whether he believed Cantu to be dangerous would change if it were true that Cantu had supplied guns for a murder.

Next, Cantu called Ramsey Hernandez, a community supervision officer assigned to Cantu, to testify. The State called on Hernandez to testify during the second motion to revoke hearing. Hernandez maintained that he knew that Cantu's son suffered from a form of cancer, but he never received any documentation. Hernandez testified that Cantu had failed to attend appointments on numerous occasions and also failed to attend rescheduled appointments. Hernandez stated that Cantu's reasons for missing appointments were due to work and his son's medical appointments in San Antonio, Texas.

Cantu then called Michael Jaramillo, Lieutenant of the Criminal Investigation Division for the Alice Police Department, to testify. The State called on Jaramillo to testify during the second motion to revoke hearing. Jaramillo supplied testimony regarding an incident where Cantu's house was shot at.[5] On cross-examination, Jaramillo testified that Cantu had been involved in a murder investigation that included two rival gangs, Latin Kings and Raza Unida. On redirect-examination, Jaramillo stated that Cantu cooperated in the murder investigation and was never charged for allegedly providing guns in a murder. Jaramillo said it was never confirmed that Cantu had provided the guns for a

---

[5] According to Lieutenant Jaramillo's testimony, there was a dispute between Cantu and a Latin Kings gang member, Jason Cantu, over the parentage of Cantu's son.

4

murder. On re-cross-examination, Jaramillo indicated that Cantu's cooperation in the murder investigation involving Latin Kings and Raza Unida was self-serving because Cantu had "basically" been indicted for supplying guns for a murder and did not want to be prosecuted.

Cantu called Detention Sergeant Luis Melendez to testify about his knowledge of the sign-in logs that attorneys must sign before meeting with inmates. The sign-in logs contained different dates than specified by Cantu's trial counsel. However, Cantu's trial counsel testified later in the hearing that he did not keep a good account of his visitation with clients.

Finally, Cantu called his trial counsel to testify. Cantu's trial counsel said he met with Cantu about three to four times and for a total of three to four hours. Cantu's trial counsel did not recall Cantu recommending any witnesses other than his wife to testify at the second motion to revoke hearing. When asked if Cantu recommended any witnesses that could provide any mitigating evidence, Cantu's trial counsel stated that the main mitigating evidence was the evidence regarding Cantu's son's cancer. Hernandez was the only witness Cantu's trial counsel interviewed regarding Cantu's son's cancer. Cantu's trial counsel knew Cantu travelled to San Antonio, Texas for his son's medical treatment. Cantu's trial counsel made no attempt to retrieve any medical records.

Cantu's trial counsel further testified he knew the State was seeking a twenty-year sentence. Cantu's trial counsel also knew that Cantu's gang affiliation was going to be an issue and that the State was going to call on a gang expert to testify. Cantu's trial counsel talked to Cantu about his gang affiliation status. Specifically, Cantu told his trial counsel that gang members were shooting at his house because he was leaving the gang.

5

Cantu did not offer his trial counsel any information on his cooperation with law enforcement. Cantu's trial counsel did not believe there were any credible witnesses that could testify on Cantu's behalf that could rebut Cantu's gang affiliation. Cantu's trial counsel also did not believe it was good strategy to let Cantu testify about his renunciation of gang affiliation.

According to Cantu's trial counsel, Cantu did not talk with him about any of his employers. Cantu's trial counsel could not remember any specifics about whether Cantu was working and did not interview any of his employers. Cantu's trial counsel testified that Cantu talked to him about his involvement with his church, but Cantu's trial counsel did not find out the identity of the pastor of the church. Cantu's trial counsel testified that he did not like the idea of asking a pastor to testify on Cantu's behalf because he did not believe it would be "sufficient." Cantu also spoke to his trial counsel about how he had turned his life around. However, Cantu's trial counsel did not ask Cantu if any witnesses could testify about Cantu turning his life around.

When asked why he did not make any arguments during the punishment stage regarding mitigating circumstances, Cantu's trial counsel stated he had already made these arguments during the previous three or four hours of the hearing. Cantu's trial counsel also mentioned that he knew the judge conducting the hearing very well and knew the judge did not want him to go over the facts again. Cantu's trial counsel said that he often modifies his approach to a case depending on the presiding judge.

Cantu's trial counsel did not call Cantu to testify on his own behalf because he believed that Cantu would not be able to withstand cross examination from the State. He also did not want Cantu to provide any evidence regarding charges pending against

6

Cantu in Alice, Texas. Cantu's trial counsel considered calling Cantu's wife to testify, but he believed she would do more harm than good. Hernandez was the only witness that Cantu's trial counsel believed could help Cantu, and he had already testified earlier in the hearing. Hernandez knew that Cantu's son had cancer and could also make a recommendation that Cantu not serve any prison time.

When asked by the State if he went over case strategy with Cantu, Cantu's trial counsel stated that he did. Cantu's trial counsel testified that he did everything Cantu wanted him to do including pleading not true to all of the allegations. Pleading not true to all of the allegations was consistent with the agreed strategy between Cantu and his trial counsel. With regards to pre-trial preparation, Cantu's trial counsel contacted Cantu's former attorney and contacted the attorneys for the State. Cantu's trial counsel also filed motions for additional discovery with regards to allegations in Alice, Texas and watched all of the videos provided by the Alice Police Department.

The motion for new trial and motion to reconsider punishment were denied by the trial court. On November 22, 2017, Cantu filed his appeal requesting a reversal of the punishment and a remand for a new punishment hearing.

## II.    DISCUSSION

### A.    Claim of Ineffective Assistance of Counsel

Cantu claims that his trial counsel was ineffective under the *Strickland* standard for failure to investigate mitigating evidence and witnesses on his behalf. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

#### 1.    Standard of Review

7

The right to effective assistance of counsel is guaranteed by the Sixth Amendment of the U.S. Constitution. U.S. CONST. amend. VI. The Sixth Amendment guarantees the right to effective assistance of counsel in state criminal prosecutions. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). When claiming ineffective assistance of counsel, the convicted defendant must show that his or her counsel's performance was deficient and that this deficiency prejudiced the defendant's ability to receive a fair trial. *Strickland*, 466 U.S. at 687.

The convicted defendant must show that counsel's performance was deficient in falling below an objective standard of reasonableness. *Id.* at 688. Counsel's performance should be given deferential treatment when being reviewed. *Id.* at 689. We must begin our review with the strong presumption that the counsel's performance, "[fell] within the wide range of reasonable professional assistance." *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (quoting *Strickland*, 466 U.S. at 689). The power of hindsight can distort the reviewing of the counsel's performance, so we must evaluate counsel's performance from counsel's perspective at the time of the challenged conduct. *Strickland*, 466 U.S. at 689. We must also consider all of the circumstances while reviewing counsel's performance. *Id.* at 688; *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

The convicted defendant must also show that counsel's deficient performance prejudiced the defendant's ability to receive a fair trial. *Strickland*, 466 U.S. at 687. "This means that the appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

8

*Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002) (citing *Strickland*, 466 U.S. at 687). The prejudice component of *Strickland* applies to all claims of deficient performance of counsel including noncapital sentencing proceedings. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

The convicted defendant must prove by a preponderance of the evidence that counsel's assistance was ineffective. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). The convicted defendant must establish both prongs of *Strickland. Strickland*, 466 U.S. at 687. The order in which the prongs are assessed is not static. *Id.* at 697. If the prejudice element can be disposed of easily, there is no need to address the deficiency of counsel. *Id.*

**2.      Analysis**

**a.      Whether Counsel's Performance was Deficient**

Cantu contends that his trial counsel's performance was deficient under the first prong of *Strickland* for failure to investigate mitigating evidence and witnesses on behalf of Cantu. Cantu presented several witnesses to prove that his trial counsel had not conducted a proper investigation that would have been beneficial during the sentencing stage of Cantu's motion to revoke hearing. Cantu called on Thompson and Smith to provide the court with information regarding Cantu that could have allegedly been investigated by Cantu's trial counsel and presented as mitigating evidence. Cantu also called on his trial counsel to testify about his performance.

The State argues that Cantu's trial counsel provided effective assistance of counsel under the first prong of *Strickland.* The State contends that Cantu's trial counsel

conducted pre-trial investigation and took the proper steps during the second motion to revoke hearing.

Counsel's decision to not investigate deserves a "heavy measure of deference," *Strickland*, 466 U.S. at 691, and we must look at the totality of the trial counsel's representation and not just isolated acts or omissions. *Diaz v. State*, 905 S.W.2d 302, 307 (Tex. App.—Corpus Christi 1995, no pet.). Given the totality of the circumstances, it cannot be said that Cantu's trial counsel's performance fell below an objective standard of reasonableness. 466 U.S. at 688. Cantu's trial counsel investigated what he believed to be Cantu's best mitigating evidence, Cantu's son's cancer, and made sure this issue was developed. Cantu's trial counsel testified that he interviewed and cross-examined Hernandez, who had knowledge of Cantu's son. Cantu's trial counsel interviewed Cantu's wife but thought it would generate more harm than good for Cantu's case. Cantu's trial counsel stated that he did everything Cantu asked of him and that they both agreed to the case strategy. Cantu's trial counsel objected several times throughout the second motion to revoke hearing and attempted to impeach a witness. Cantu's trial counsel also watched multiple police camera videos related to Cantu's arrest, spoke with Cantu's former attorney, and spoke with several State attorneys about his client's case. Cantu's trial counsel did not present any witnesses during the punishment stage of the hearing because Cantu's main witness for mitigating evidence had previously been called by the State.

With regards to Cantu's gang affiliation, Cantu's trial counsel did not believe there were any credible witnesses that could confirm Cantu's renunciation of gang affiliation. Cantu's trial counsel did not believe it would be prudent to call on Cantu to testify on his

10

own behalf about his renunciation of gang affiliation. Cantu and his trial counsel talked about his pastor, but Cantu's trial counsel did not believe what he could provide to be sufficient in his judgment. There was not any specific information revealed about this conversation that rebuts the presumption that Cantu's trial counsel implemented sound trial strategy. *Id.* at 689. The court should presume that Cantu's trial counsel made his decisions based on "reasonable professional judgment." *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (quoting *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992)). If Cantu had talked to his trial counsel about his employers, Cantu's trial counsel would likely have investigated Cantu's employers if he thought it would have helped his cause. Cantu's trial counsel was not asked why he did not inquire about Cantu's work history. Even if this act by trial counsel to not investigate Cantu's work history were to be considered a misjudgment, it would still not make Cantu's trial counsel's performance ineffective. *See Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986) (stating that isolated errors or omissions by counsel do not make counsel's performance ineffective). Under *Strickland*, effective assistance of counsel does not mean perfect counsel. *Id.* "Counsel is not to be judged as ineffective merely because hindsight shows that a different strategy would have produced a more desirable result for the accused." *Ex Parte Perkins*, 706 S.W.2d 320, 323 (Tex. Crim. App. 1986). The court should be hesitant to declare counsel ineffective based on singular instances of miscalculation. *See Thompson*, 9 S.W.3d at 814. Accordingly, we conclude that Cantu has not shown that his trial counsel fell under an objective standard of reasonableness required by the first prong of *Strickland*. *Strickland*, 466 U.S. at 688.

b.      **Whether Counsel's Performance Prejudiced the Defendant**

11

Cantu also contends that his trial counsel's alleged deficient performance prejudiced him because the witnesses that counsel presented during the motion for new trial hearing demonstrated the availability of mitigating evidence. Cantu contends that his trial counsel offered no counter-weight to the State's "wholly negative" portrayal of Cantu.

The State responds that there was no new evidence presented during the motion for new trial hearing that would create a reasonable probability that the outcome during the sentencing stage of the second motion to revoke hearing would have been different under the reasoning of the second prong of *Strickland. Id.* at 694.

Under the second prong of *Strickland*, Cantu must show that he was prejudiced by his trial counsel's deficient performance. *See Id.* There must be a reasonable probability, but for Cantu's trial counsel's deficient performance, the outcome of the hearing would have been different. *See Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The evidence presented during the motion for new trial hearing must undermine the confidence of the judgment of the second motion to revoke hearing. *Id.*

Cantu does not highlight particular evidence that was discovered during the motion for new trial hearing which shows Cantu was prejudiced by his trial counsel during the second motion to revoke hearing. Cantu makes a broad conclusory statement as to Cantu's trial counsel prejudicing him during the punishment stage of the second motion to revoke hearing.

The evidence discovered during the motion for new trial does not prove, but for trial counsel's deficient performance, the outcome of the hearing would have been different. *See Id.* Even had Cantu shown that his trial counsel's performance was deficient, his claim for ineffective assistance of counsel would fail because Cantu has not

12

shown that his trial counsel prejudiced his ability to receive a fair trial. *See Strickland*, 466 U.S. at 687.

Cantu asks the court to look at *Milburn v. State* for comparison to the instant case. *See Milburn v. State*, 15 S.W.3d 267, 270 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). In *Milburn*, counsel for the defendant did not provide any mitigating evidence during the sentencing stage, nor did counsel investigate any witnesses on behalf of the defendant. *Id.* The result of the lack of mitigating evidence was a sentence that exceeded what the State asked for at trial. *Id.* The defendant presented evidence consisting of affidavits from twenty witnesses willing to testify on defendant's behalf. *Id.* The *Milburn* Court concluded this was enough evidence to prove the defendant was prejudiced during the punishment stage. *Id.* at 271.

In the instant case, Cantu presented only two witnesses that his trial counsel could have called during the second motion to revoke hearing. The two witnesses, Thompson and Smith, were minimally supportive at best. On cross-examination, both of their positive opinions of Cantu became diluted when presented with new information about Cantu. The trial judge would have had to weigh this minimally supportive testimony against the overwhelming evidence already found to be true of Cantu. *See Ex Parte Martinez*, 195 S.W.3d 713, 731 (Tex. Crim. App. 2006). When discovered evidence may barely affect the judgment of the sentencing judge, the absence of the evidence cannot be said to have prejudiced the defendant. *See Strickland*, 466 U.S. at 699–700. Plus, Cantu's trial counsel had already considered calling on Smith to testify but decided against it. Instead, Cantu's trial counsel thought it would be a better strategy to focus on Cantu's son's cancer as Cantu's main piece of mitigating evidence. So, unlike in *Milburn*,

13

Cantu's trial counsel did investigate and present mitigating evidence during trial. Accordingly, we conclude that Cantu has not presented evidence that demonstrates his trial counsel's performance prejudiced his ability to receive a fair trial under the second prong of *Strickland*. *Id.* at 687.

### 3. Summary

We conclude that Cantu's trial counsel's performance was not deficient under the first prong of *Strickland*. *Id.* Even if Cantu's trial counsel was found to be deficient under the first prong, Cantu did not present any evidence showing he was prejudiced by his trial counsel's performance under the second prong of *Strickland*. *See id.* The trial court did not err in denying Cantu's motion for new trial and motion to reconsider punishment. Cantu's sole issue claiming ineffective assistance of counsel is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed this
12th day of July, 2018.

14