TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00395-CR







Tony Warren Nix, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF COKE COUNTY, 51ST JUDICIAL DISTRICT


NO. 963, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING










 After Tony Warren Nix was convicted of murder the jury fixed punishment at 99
years' confinement in the Institutional Division of the Texas Department of Criminal Justice. See
Tex. Penal Code Ann. § 19.02(b)(2) (West 1994). Appellant brings nineteen points of error. We
will overrule appellant's points of error and affirm the judgment of conviction. 


BACKGROUND

 Appellant drove to the rural home of the Coke County sheriff about 9:00 p.m. on
April 22, 1995, and told the sheriff that he and his girlfriend, Janet Flanagan Yates, had a fight
and that she was hurt "bad." There was blood on appellant's hands and clothes. Appellant
described the location where he had left Janet Yates, and the sheriff called other law enforcement
officers who reached the scene before the sheriff. The car in which appellant arrived had blood
on the dashboard, seats, floor, headliner and door panels. A bloody hunting knife was on the
driver's side of the dashboard and a revolver on the right side of the driver's bucket seat. Janet
Yates' body was found face down in a large pool of blood in the middle of a paved road three-tenths of a mile from appellant's mobile home. The location was about a fifteen-minute drive from
the sheriff's house. Her body had numerous stab and cut wounds, with a group of eight knife
wounds on her right lower face and neck. The knife had penetrated the jugular vein, severed the
right carotid artery, cut almost through the larynx, penetrated the base of the tongue and incised
marks on the vertebrae of the neck. 


CUSTODIAL STATEMENTS

 In his first point of error, Nix contends the trial court erred by permitting a fellow
jail inmate to testify regarding statements made to him by appellant. Appellant contends the
inmate was acting as an agent of the State at the time of the conversation and that the requirements
for admission of an oral statement made pursuant to custodial interrogation were not met. Tex.
Code Crim. Proc. Ann. art. 38.22, § 3(a) (West Supp. 1998) (specifies recording of statement,
warnings, and waiver of rights). It is undisputed that those requirements were not met. The
State's reply to this point is that the inmate was not acting as an agent of the State, and therefore
the statement did not stem from custodial interrogation. See Tex. Code Crim. Proc. Ann. art.
38.22, § 5 (West 1979)("Nothing . . . precludes the admission of a statement . . . that does not
stem from custodial interrogation . . . ."). The Court of Criminal Appeals has said: 


This Court has long held that a statement by an accused person to a fellow cellmate
that was voluntary, that did not stem from custodial interrogation, and that was not
obtained by the cellmate while acting as an agent of law enforcement officials is
admissible evidence against the accused at his trial. See Pinkerton v. State 660
S.W.2d 58, 63-64 (Tex. Cr. App. 1983).



Baldree v. State, 784 S.W.2d 676, 686 (Tex. Crim. App. 1989).

 "Custodial interrogation" was defined in Miranda v. Arizona, 384 U.S. 436, 444
(1966), as "questioning initiated by law enforcement officers after a person has been taken into
custody or otherwise deprived of his freedom of action in any significant way." Simply being in
custody is not sufficient to invoke Miranda or the Texas statutory protections. There must be
some form of interrogation. See Kelley v. State, 817 S.W.2d 168, 173 (Tex. App.--Austin 1991,
pet. ref'd). Interrogation connotes a calculated practice on the part of a government official in an
attempt to evoke an incriminating response. McCrory v. State, 643 S.W.2d 725, 734 (Tex. Crim.
App. 1983). Further, interrogation is "questioning initiated by law enforcement officers." Wicker
v. State, 740 S.W.2d 779,785 (Tex. Crim. App. 1987). The determination whether appellant's
statement in this case was elicited by custodial interrogation hinges upon whether the inmate
witness was acting as an agent of the State pursuant to a police practice at the time the statement
was made. See Paez v. State, 681 S.W.2d 34, 37 (Tex. Crim. App. 1984) (confession to State
child placement worker who interviewed defendant in custody in hospital about care for her
children was not custodial interrogation). 

 The inmate witness, Clyde Winsberry, was a trusty at the Tom Green County Jail
when appellant was brought there from Coke County after his arrest. About 9:00 a.m. the jailers 
asked Winsberry to serve on "fire watch." Some witnesses referred to it as a "suicide watch."
This implied a responsibility to observe the condition and behavior of an inmate who might be
suicidal or have some other health problem to insure that he did not hurt himself. Winsberry was
not in the cell with appellant but could observe him and talk to him from outside the cell. 
Appellant was initially in a holding cell very near the booking desk and was within view of the
jailers on duty. When Winsberry first saw appellant he was pacing, rocking, coughing and
spitting on the floor and speaking gibberish. Winsberry observed track marks on his arm. During
the time Winsberry was watching and talking to appellant, he asked if appellant had shot some bad
dope. Nix told him he had gotten some bad dope, that he had been taking dope for a long time
and he had never before had anything like what he had taken and that someone would pay for it. 
After a while appellant was moved to another cell and his behavior changed. He calmed down and
could speak clearly. Winsberry stayed in the area for thirty minutes to an hour. During this time,
appellant told him he had just ruined his whole life because he had just killed his old lady. He said
they were in the car and he had punched her in the chest with a knife. He told Winsberry his car
and dash were wet and slippery with the blood. He said that after he had killed his old lady he
drove to a house where he knew a police car would be. Nix was concerned about what might
happen to him, and thought he was looking at forty or sixty years in prison. 

 In a hearing outside the presence of the jury, Winsberry was questioned at length
about the circumstances of his being on fire watch and what his duties were. Winsberry had been
in jail for about three months on a pending motion to revoke his probation. As a trusty, his
normal duties were to work in the kitchen and on fire watch. Fire watch was a volunteer job and
he had done it thirty or forty times. He was not given any instructions about interviewing or
interrogating the person he watched. No one told him to talk to appellant or not to talk to him. 
Normally, Winsberry would talk to the people he watched to make sure they were okay. 
Winsberry was not told appellant's name, didn't know what offense he may have committed, or
why he was in jail. Winsberry did not know that somebody had been killed, and didn't necessarily
believe what appellant told him. After Nix had told Winsberry these things, but while he was still
on fire watch, two of the jailers on duty called Winsberry aside and told him that there was a
ranger who would want to talk to him about what appellant had said to him. Winsberry left about
11:00 a.m. to go to the kitchen to work. A Texas Ranger investigating the case interviewed
Winsberry later that afternoon at the jail and recorded the interview. Winsberry testified at trial
that he had talked with all of the thirty or forty prisoners he monitored on fire watch. He had
never told the jailers anything about anyone's comments. He had never before been asked about
any conversation he had with a prisoner while on fire watch. He did not volunteer the information
about what appellant told him. The jailers had approached him about it.

 Appellant points to no evidence of any agreement, arrangement, or practice for
Winsberry to act as an agent of the State to interrogate appellant. Appellant suggests that
Winsberry's trusty status with some special privileges makes him an agent of the State. None of
the privileges or duties given to Winsberry placed him in a law-enforcement role. Appellant and
the State both refer to Macias v. State, 733 S.W.2d 192 (Tex. Crim. App. 1987), as the most
relevant authority. In Macias, one inmate, Parker, testified that he overheard the defendant
Macias confess to murder to Clarke, another inmate. An assistant district attorney had requested
the captain in charge of the jail to place Macias in a cell with Clarke, who had on two previous
occasions provided information to the district attorney's office about what defendants charged with
murder had confessed to him. The assistant district attorney did not tell the jail captain why he
wanted Macias put in the same cell with Clarke, and Clarke was not informed why he and Macias
had been placed together. Four days after they had been put in the same cell, Clarke told the jail
captain he wanted to speak with someone in the district attorney's office about an important
matter. Clarke told the assistant district attorney that Macias had confessed to the murder of a
husband and wife. Clarke also said that another inmate, Parker, might have overheard the
conversations. At trial Parker testified, Clarke did not. The Court of Criminal Appeals found that
since Clarke was never informed why Macias was placed in the same cell, and Clarke was not
asked to question appellant or to report his discoveries, Clarke was not acting as an agent of law
enforcement personnel in his conversations with Macias. Hence, the restrictions placed on
custodial interrogation did not apply to preclude admission of the statements made to Clarke and
overheard by Parker. In the instant case, Winsberry's situation is even less suggestive that he was 
an agent of the State, since Winsberry had no history of previous reports to officials such as
Clarke had made. Also, there was no evidence that Winsberry was assigned the fire watch at the
request of any law enforcement person involved in the investigation of this offense. 

 The instant case is much closer factually to Kelley v. State, 817 S.W.2d 168 (Tex.
App.--Austin 1991, pet. ref'd). In Kelley, a neighbor of the defendant was a member of the
Emergency Medical Service called to respond to a shooting at the Kelley trailer house. Her
husband, Larry Conner, was a minister and part-time pharmacist who came along on the call
which was just 300 yards from their house. Conner was not acquainted with Kelley but knew him
by sight. Conner saw a trooper talking to Kelley, but heard nothing. When the trooper and Mrs.
Conner started toward the trailer house, the trooper asked Conner to stay with Kelley. They sat
at a picnic table. Conner only knew that there had been a shooting and had no instructions from
the trooper. Conner explained at trial that he was concerned about Kelley's health and asked,
"How do you feel?" Kelley replied, "How do you think someone who just did what I did would
feel?" Conner explained that he was just inquiring about his health, and Kelley assured him he
was fine physically. Kelley went on to comment "that he blew her away and that he knew that the
State would fry him for it and that God, too, would fry him for it."

 In that case, we noted that Conner was only asked to stay with Kelley. He was not
asked to interrogate him, was not shown to be an agent of the police, and his only question was
directed to appellant's health. We held that even if appellant were in custody, the statements did
not stem from custodial interrogation and were admissible. In the present case, Winsberry was
there to watch out for appellant's health, was not asked to question appellant, had never
volunteered information obtained from inmates he was assigned to watch, and only gave
information in this case upon request from a law enforcement officer he had not spoken with until
after his observation of appellant. There was no evidence that Winsberry was a part of a system
or practice to obtain information from inmates. Appellant has failed to show that Winsberry was
an agent of the State and thus the statements made to him did not stem from custodial
interrogation. We overrule the first point of error.


FINDINGS OF FACT

 Appellant's second point of error is that the trial court failed to file specific findings
of fact supporting the judge's determination that the statement was voluntary. See Tex. Code
Crim. Proc. Ann. art. 38.22, § 6 (West 1979). The State's position is that a statement that does
not stem from custodial interrogation is not subject to the requirement that findings of fact be filed.

 In this case, the careful trial court held a hearing outside the presence of the jury
when appellant requested it. The specific basis for the request does not appear in the record, but
the questioning of the witness Winsberry and the arguments at the hearing were clearly limited to
the issue of whether he was acting as an agent of law enforcement at the jail. Winsberry was the
only witness at the hearing, and nothing in his testimony gave any basis for a conclusion that he
was an agent of the State. There was no conflicting evidence; there was no fact in dispute upon
which the trial court could make a finding. Even if the trial court disbelieved everything
Winsberry said, there still would be no evidence that he was an agent of the State. In Trybule v.
State, 737 S.W.2d 617, 621 (Tex. App.--Austin 1987, pet. ref'd), we stated that before any fact
finding as to voluntariness of a statement is required, there must be some evidence that the
statement was not voluntary. See Pete v. State, 471 S.W.2d 841, 843 (Tex. Crim. App. 1971);
Miller v. State, 666 S.W.2d 269, 274 (Tex. App.--Dallas 1984, pet. ref'd). We overrule point
of error number two.



HEARSAY

 Appellant's third point of error contends that the trial court erred in sustaining the
State's hearsay objection to the Coke County sheriff's being asked to testify about the toxicology
results from the autopsy report. The sheriff was the first witness. Appellant sought to show that
methamphetamine had been found in Janet Yates's body in order to determine whether this fact
influenced the sheriff in his investigation of the case. The trial court sustained the objection, but
permitted appellant to ask, without mentioning methamphetamine, whether the sheriff did
something else after reading the autopsy report. The sheriff's answer was "No." Later in the trial
the toxicology findings were properly admitted into evidence through the testimony of a physician
who was a forensic pathologist in the medical examiner's office where the autopsy was performed.
The sheriff was also called again as a witness on another matter after the toxicology report was
admitted into evidence. Appellant cross-examined the sheriff but did not attempt to renew the
question of whether the fact that the deceased had methamphetamine in her body influenced the
sheriff's investigation. 

 On appeal, we review the trial court's decision to admit or exclude evidence under
an abuse-of-discretion standard. See Green v. State, 934 S.W.2d 92, 102 (Tex. Crim. App.
1996), cert. denied, 117 S. Ct. 1561 (1997). Only if a decision is so clearly wrong as to lie
outside the zone where reasonable persons might disagree can we say that the trial court has
abused its discretion. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)
(opinion on rehearing). 

 The Court of Criminal Appeals has stated that testimony frequently will have an
impermissible hearsay aspect along with a permissible nonhearsay aspect, that it is almost always
relevant for a testifying officer to relate how she happened upon the scene of the crime, and that
in such instances it is permissible for her to testify that she was acting in response to "information
received." Schaffer v. State, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989). Here, the trial judge
permitted appellant to ask a question designed to determine whether the sheriff's investigation was
influenced by the autopsy report without eliciting the hearsay. 

 Information in an autopsy report prepared by a person other than the witness
testifying is hearsay. Garcia v. State, 868 S.W.2d 337, 339 (Tex. Crim. App. 1993). See Butler
v. State, 872 S.W.2d 227, 229 (Tex. Crim. App. 1994) (autopsy report is admissible as an
exception to the hearsay rule under the public records provision of Tex. R. Crim. Evid.
803(8)(B)). Various cases have discussed chemist's and toxicologist's reports in terms of whether
a particular exception to the hearsay rule is applicable to permit their introduction in evidence, but
in none of these cases has it been contended that such a report is not hearsay if it was prepared by
a person who is not testifying. See Aguilar v. State, 887 S.W.2d 27 (Tex. Crim. App. 1994)
(record insufficient to determine whether chemists and toxicologists of Bexar County Forensic
Science Center are law enforcement personnel and thus excluded from the public record exception
to the hearsay rule); Cole v. State, 839 S.W.2d 798 (Tex Crim. App. 1992) (DPS chemists held
to be law enforcement personnel, thus report not admissible under hearsay exception for public
records, Tex. R. Crim. Evid. 803(8)(B)); Durham v. State, 956 S.W.2d 62 (Tex. App.--Tyler
1997, pet. ref'd) (chemists and toxicologists of Bexar County Forensic Science Center are not law
enforcement personnel, thus report admissible under public record exception); Caw v. State, 851
S.W.2d 322, 323-24 (Tex. App.--El Paso), pet. ref'd, 864 S.W.2d 546 (Tex. Crim. App. 1993)
(chemists of Dallas County Forensic Laboratory are not law enforcement personnel, thus report
admissible as public record exception to hearsay). These authorities make it clear that the
evidence in question was hearsay as to the sheriff, and the trial court was not unreasonable in
sustaining the State's objection.

 In any event, the information in the report was eventually admitted and appellant
had another opportunity to confront the sheriff with this information. No possible harm could
have occurred because of the trial court's ruling. We overrule appellant's third point of error.


PHYSICAL EVIDENCE

 Appellant's fourth point of error contends the trial court erred by admitting into
evidence five items from the rape kit utilized in tests on the deceased. One item was fingernail
clippings, two were slides, and two more were swabs. Appellant's sole objection was that these
items were not relevant. The physician from the medical examiner's office testified that a rape
kit is obtained on all female homicide victims. The State argues the slides and swabs were
relevant to show there was no physical evidence that any person other than appellant had recent
sexual contact with the deceased. A Department of Public Safety Crime Laboratory employee
testified that the fingernail clippings had traces of blood on them. The slides and swabs at issue
are from the oral and rectal samples which tested negative for presence of spermatozoa. (Vaginal
samples were positive and linked to appellant, and no objection was made to their admission).

 A trial court has broad discretion in admitting or excluding evidence. Only when
a trial court has abused its discretion should an appellate court conclude that the ruling was
erroneous. Montgomery, 810 S.W.2d at 390-91. Questions of relevance should be left largely
to the trial court, relying on its own observations and experience, and will not be reversed absent
an abuse of discretion. Id. at 391. The evidence at issue here may be of minimal importance but,
as the trial court noted, it does show a part of the overall condition of the body of the deceased. 
We cannot say that the trial court abused its discretion in admitting this evidence. Even if it were
error to have admitted it, there is no harm. Appellant does not argue that the evidence had any
negative impact on his defense or affected any substantial right. Error may not be predicated upon
a ruling admitting evidence unless a substantial right of the appellant is affected. Tex. R. Evid.
103(a). A substantial right is affected when the error had a substantial and injurious effect or
influence on the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). 
Under either the former or present rule for determining reversible error, there was none here. We
determine beyond a reasonable doubt that admission of this evidence made no contribution to the
conviction or punishment. See former Tex. R. App. P. 80(b)(2). If there was error in the
admission of the evidence, it was harmless error under the test of the current Rule 44.2(b). See
Tex. R. App. P. 44.2(b) (nonconstitutional error that does not affect substantial rights must be
disregarded). We overrule point of error four.



PREVIOUS CONVICTIONS

 Appellant's fifth and sixth points of error relate to a witness's misstatement, at the
punishment hearing, about a prior offense. The fifth point of error complains of the denial of
appellant's motion for mistrial, while the sixth point of error complains of the trial court's later
denial of appellant's motion for new trial based upon the same facts. The State introduced
documentary evidence of two previous convictions, one for possession of methamphetamine in
1980 and another for possession of marihuana in 1981. The State then called the arresting officer
in the methamphetamine case. This witness testified that in 1980 he and his partner were
detectives in the narcotics service of the San Angelo Police Department and had information that
appellant was transporting narcotics from Ozona to San Angelo. They stopped appellant's car and
got out of their vehicle. Appellant then started up his car and tried to run over both of them. 
They jumped aside. He missed and drove away. Appellant stopped a short way down the road
after shots were fired and he was then arrested. The State asked the witness if he was aware that
appellant had been convicted of possession of methamphetamine as a result of that incident. The
witness's answer was essentially that he thought the conviction was for aggravated assault with
a motor vehicle. Appellant objected to the witness's erroneous reply and, outside the presence of
the jury, contended the misstatement was so inflammatory that the trial court should grant a
mistrial. The court inferentially sustained the objection, directed the State to clear up the witness's
confusion and overruled the motion for mistrial. Before the jury, the witness was shown the
judgment in the methamphetamine conviction and he acknowledged that he was mistaken about
appellant's being convicted for something other than possession of methamphetamine. 

 Appellant's points of error are limited to the witness's confusion about which
offense appellant had been convicted for growing out of one incident. The misstatement was
promptly corrected. Appellant does not contest the admission of the witness's testimony about the
circumstances of the arrest which led to his methamphetamine conviction, and the facts of his
attempt to run over the two detectives. His brief acknowledges that a statute specifically permits
introduction at the punishment phase of the trial of "evidence of an extraneous crime or bad act
that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or
for which he could be held criminally responsible, regardless of whether he has previously been
charged with or finally convicted of the crime or act." Tex. Code Crim. Proc. Ann. art. 37.07,
§ 3(a) (West Supp. 1998).

 Appellant cites only Boyde v. State, 513 S.W.2d 588 (Tex. Crim. App. 1975), to
support his position that the error was so serious that the trial court should have granted a mistrial. 
Boyde states the general rule that error in asking an improper question or in admitting improper
testimony is cured or made harmless by a withdrawal of the evidence or an instruction to
disregard. This rule controls except in extreme cases where it appears that the question or
evidence is clearly calculated to inflame the minds of the jury and is of such a character as to
suggest the impossibility of withdrawing the impression created in their minds. Id. at 590. In
Boyde, the conviction was reversed because the prosecutor deliberately and repeatedly asked
inflammatory questions that the court had prohibited. There is no suggestion of prosecutorial
misconduct in the instant case. The State was apparently as surprised by the witness's answer as
was the appellant; when the State proposed how the matter could be clarified the trial court
approved that suggestion. This is not an extreme case and there was no indication of calculation
on the part of the prosecutor to inflame the minds of the jurors. We do not believe there was any
potential for the witness's confusion to have inflamed the minds of the jury. The jury already
knew the facts of appellant's bad conduct in attempting to run down the detectives, and evidence
of his actual convictions had already been admitted. Appellant did not request an instruction to
disregard, but we believe that the court's direction to the prosecutor and the prosecutor's 
withdrawal of the erroneous remark satisfied any such instruction had it been given. The action
taken to meet appellant's objection was enough to cure any error that might have arisen from the
witness's confusion. No mistrial was justified on this basis. We overrule the fifth and sixth points
of error.


INEFFECTIVE ASSISTANCE OF COUNSEL

 In points of error seven through nineteen appellant contends he received ineffective
assistance of counsel. The separate points specify the particular instances that he believes
constitute ineffective assistance on the part of his trial counsel. Appellant's counsel on appeal
presents these points of error with the explanation that he does not agree with appellant's legal
position on these points, and upon consideration of the matter he does not believe that trial
counsel's representation was ineffective. Appellate counsel moved to withdraw from representing
appellant because of this difference of legal opinion. The trial court overruled the motion after
a hearing at which appellant set forth the instances of what he considers deficient representation. 
Appellant's counsel's brief sets out the facts in the record that relate to the various points. We will
consider the points of error raised.

 To show ineffective assistance of counsel, appellant must show that (1) trial
counsel's performance was deficient, in that counsel made such serious errors that he was not
functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such
a degree that appellant was deprived of a fair trial. Strickland v. Washington, 466 U.S.
668(1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); O'Hara v. State, 837
S.W.2d 139 (Tex. App.--Austin 1992, pet. ref'd). Counsel's performance is to be judged by the
"totality of representation" provided. Strickland, 466 U.S. at 690; Butler v. State, 716 S.W.2d
48, 54 (Tex. Crim. App. 1986). Appellant must show omissions or other mistakes made by
counsel that amount to professional errors of a magnitude sufficient to raise a reasonable
probability that the outcome of the trial would have been different but for the errors. Id. at 54. 

 An appellate court must judge the reasonableness of counsel's challenged conduct
in light of the facts of the particular case, viewed at the time of counsel's conduct and not by
hindsight. We must then determine, in light of all the circumstances, whether the acts or
omissions are outside the range of professionally competent assistance. Strickland, 466 U.S. at
690. Appellant bears the heavy burden of proving his ineffective-assistance claim. Counsel is
presumed to have made all significant decisions in the exercise of reasonable professional
judgment. Id. 

 Points of error seven through thirteen fault trial counsel's cross-examination of
various witnesses. Appellant contends the doctor from the medical examiner's office should have
been questioned on a discrepancy between her testimony that some of the knife wounds were on
the right cheek and neck while the written autopsy report, which was not admitted into evidence,
said the group of wounds were on the left cheek and neck. The reference to the left cheek in the
report was obviously inadvertent because it was inconsistent with the more detailed written and
graphic descriptions elsewhere in the report. Appellant does not suggest how clearing up the
discrepancy would have benefitted his defense. 

 Appellant contends the sheriff, to whose home he drove to report his crime, should
have been more vigorously examined on why he did not conduct a more extensive investigation
by interviewing more people in the trailer park where appellant and the deceased lived. He argues
that the sheriff should also have been asked why he did not have a "criminalist" at the scene to
dust for fingerprints before items were removed from the car in which the murder took place and
who would testify about how the evidence was handled. Similarly, appellant wanted trial counsel
to cross-examine Texas Ranger Joe Hunt and Department of Public Safety Trooper Roy Blair
about handling evidence and processing at the crime scene. Ranger Hunt was cross-examined at
length on his investigation, but trial counsel did not concentrate on the handling of physical
evidence at the scene. Trooper Blair responded to the scene the night of the incident and was in
charge of getting the body of deceased transported to the autopsy. Counsel declined to cross-examine him. Appellant contends, in his general argument that more information on the
mishandling of evidence should have been developed, that Blair should have been cross-examined. 
Appellant wanted counsel to cross-examine the jail inmate witness who testified that appellant
confessed to him on the morning after the offense. Appellant thinks the inmate should have been
asked about discrepancies between the inmate's report that appellant told him he stabbed his "old
lady" in the chest while the autopsy report showed the wounds were on the face and neck. There
is no suggestion how giving this witness the opportunity to repeat his testimony might assist
appellant's defense. Appellant contends that counsel should have gone into more detail with DPS
crime laboratory technicians on lack of testing for traces of makeup on the gun found in the car,
and the inadequacy of the DNA test of blood found on the gun. The test used showed that the
blood on the gun was consistent with that of deceased. (Her blood was on many parts of the car
and items in it.) Appellant thinks counsel should have criticized the use of the "cheap" DNA test
rather than the "best" and more accurate one which could have been used. He does not explain
how results of the test could benefit his defense. 

 Cross-examination is generally considered a point of trial strategy on the part of
trial counsel which will not be second-guessed by appellate courts. Coble v. State, 501 S.W.2d
344, 346 (Tex. Crim. App. 1973). "Often, the decision to not cross-examine a witness is the
result of wisdom acquired by experience in the combat of trial." Id. We have said that complete
absence of cross-examination may be a legitimate strategy if it appears that cross-examination
would only serve to reinforce the prosecution's theory. Carmona v. State, 880 S.W.2d 227, 236
(Tex. App.--Austin 1994), vacated on other grounds, 941 S.W.2d 949 (Tex. Crim. App. 1997). 
Appellant's trial counsel reasonably could have decided not to attempt to resolve or clarify possible
inconsistencies in the State's case with excessive cross-examination. Appellant makes no showing
that any of the cross-examination he now recommends could possibly benefit his defense.

 Another group of claimed deficiencies in trial counsel's performance refer to his
failure to investigate adequately. Appellant contends that trial counsel should have had
independent tests conducted on the pistol for fingerprints, hairs, and makeup traces. He also
contends that counsel should have had other items retrieved from the car tested for fingerprints,
such as the tire and the air tank in the back seat at the time of the murder. The State had the
firearm inspected for fingerprints and the result was negative. Appellant does not suggest what
favorable evidence might have been discovered had counsel taken these investigative steps. The
automobile in which the stabbing took place was used by both appellant and the deceased. There
was no dispute that only deceased and appellant were present in the car at the time of the murder.
The presence or absence of their fingerprints, hair, or other personal traces such as makeup, on
items in the car do not appear significant in establishing anything about the circumstances of the
homicide.

 Appellant complains that counsel did not consult with him thoroughly enough, that
counsel only visited with him in the jail about six or seven times, and all the meetings were too
brief. Appellant does not suggest what information he had that counsel could have learned and
used to assist in the defense of the case. Appellant contends that counsel should have provided
him before trial with a personal copy of the autopsy report. No legal authority is cited to support
this requirement. At trial, appellant testified that he stabbed the deceased only twice and on cross-examination was unable to explain how the six other wounds in the area of the neck were inflicted. 
At the post-trial hearing on appellate counsel's motion to withdraw, appellant testified that he was
shocked to see the diagram (apparently an enlargement of a page of the autopsy report) the State
used at trial showing a group of eight stab wounds. He said that trial counsel had told him that
counsel had seen the autopsy photographs showing only two stab wounds. (Appellant did not call
trial counsel as a witness at the post-trial hearing to verify appellant's recollection of this
description of the photographs). Appellant did not go into any more detail as to how having a
personal copy of the autopsy report in advance of trial might have assisted his defense.

 Appellant complains that trial counsel was ineffective because he opposed the
introduction of the autopsy photographs in evidence and prevented the jury from seeing pictures
of the actual wounds. He introduced the photos at the hearing on the motion to withdraw. They
show the nude upper torso and head of the deceased, one with the head turned to display numerous
wounds to the right lower face and neck area. At the hearing, the trial court stated that the
objection to the photos "was, or should have been, that they are highly prejudicial and so
inflammatory because of the condition of the body that a jury could not reach a reasonable decision
because they would be so outraged that someone had cut somebody up this bad." The photos bear 
State's exhibit tags that are numbered. The record reflects that two of the photos were formally
offered, objected to by defense counsel, and excluded from evidence by the trial court. Appellant
makes no showing of how his defense was adversely affected by his trial counsel's successful
objection which prevented the admission of this seemingly inflammatory evidence.

 We agree with appellant's counsel on appeal that these points which appellant
insisted be presented have no legal or factual substance and are frivolous. None of the alleged
deficiencies in trial counsel's conduct of the case are "outside the wide range of professionally
competent assistance." Strickland, 466 U.S. at 690. Even if some of counsel's acts or omissions
were erroneous, that would not necessarily render counsel's representation ineffective. McFarland
v. State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992). The accused is not entitled to perfect or
errorless counsel. See Bridge v. State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). Isolated
instances in the record reflecting errors of omission or commission do not render counsel's
performance ineffective, nor can ineffective assistance of counsel be established by isolating one
portion of trial counsel's performance for examination. Id. Rather, whether the Strickland test
has been met is to be judged by "the totality of the representation" and, "judicial scrutiny of
counsel's performance must be highly deferential." Ex parte Welborn, 785 S.W.2d 391, 393
(Tex. Crim. App. 1990). Appellant has failed to show that any particular decision by trial counsel
was of such a serious nature that it fell below the wide range of professionally competent
assistance or that the cumulative effect of any errors denied him effective representation. The
totality of representation was not so deficient that he was not functioning effectively as counsel.

 Moreover, assuming arguendo that all of the points advanced had merit, our review
of the clearly admissible evidence dictates that the alleged errors of trial counsel were not of such
magnitude to raise a reasonable probability that the outcome of the trial would have been different
but for the errors. There was never a dispute in the evidence that appellant killed Janet Yates. 
Appellant testified at trial that he stabbed her twice in self-defense when she pointed a gun at him
while he was standing at the open driver's door. Appellant appeared at the sheriff's home on the
night of this offense and reported that his girlfriend was hurt. The interior of the car appellant was
driving was covered in blood. The bloody knife was on the dashboard. The sheriff and other law
enforcement officers went to the location and found the body of the deceased where appellant said
he left her. As he was being driven to jail, Nix volunteered to the Texas Ranger that he had got
some bad dope that made him do what he had done. At the jail, he confessed to a fellow inmate
that he had just killed his "old lady," that he had punched her in the chest with a knife, that he had
just ruined his whole life and was looking at forty to sixty years in prison, that he had been doing
drugs for a long time but had never done anything like what he had done that day. Notably, he
did not say anything to his fellow inmate, the sheriff or the sheriff's wife, or the ranger about
protecting himself from his girlfriend who had pointed a pistol at him. On this evidence, even if
all of counsel's complained of actions or omissions were errors, they were not of such a magnitude
to raise a reasonable probability that the outcome of the trial would have been different but for the
errors. We overrule points of error seven through nineteen.

 We affirm the judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: April 30, 1998

Do Not Publish



 photos "was, or should have been, that they are highly prejudicial and so
inflammatory because of the condition of the body that a jury could not reach a reasonable decision
because they would be so outraged that someone had cut somebody up this bad." The photos bear 
State's exhibit tags that are numbered. The record reflects that two of the photos were formally
offered, objected to by defense counsel, and excluded from evidence by the trial court. Appellant
makes no showing of how his defense was adversely affected by his trial counsel's successful
objection which prevented the admission of this seemingly inflammatory evidence.

 We agree with appellant's counsel on appeal that these points which appellant
insisted be presented have no legal or factual substance and are frivolous. None of the alleged
deficiencies in trial counsel's conduct of the case are "outside the wide range of professionally
competent assistance." Strickland, 466 U.S. at 690. Even if some of counsel's acts or omissions
were erroneous, that would not necessarily render counsel's representation ineffective. McFarland
v. State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992). The accused is not entitled to perfect or
errorless counsel. See Bridge v. State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). Isolated
instances in the record reflecting errors of omission or commission do not render counsel's
performance ineffective, nor can ineffective assistance of counsel be established by isolating one
portion of trial counsel's performance for examination. Id. Rather, whether the Strickland test
has been met is to be judged by "the totality of the representation" and, "judicial scrutiny of
counsel's performance must be highly deferential." Ex parte Welborn, 785 S.W.2d 391, 393
(Tex. Crim. App. 1990). Appellant has failed to show that any particular decision by trial counsel
was of such a serious nature that it fell below the wide range of professionally competent
assistance or that the cumulative effect of any errors denied him effective representation. The
totality of representation was not so deficient that he was not functioning effectively as counsel.

 Moreover, assuming arguendo that all of the points advanced had merit, our review
of the clearly admissible evidence dictates that the alleged errors of trial counsel were not of such
magnitude to raise a reasonable probability that the outcome of the trial would have been different
but for the errors. There was never a dispute in the evidence that appellant killed Janet Yates. 
Appellant testified at trial that he stabbed her twice in self-defense when she pointed a gun at him
while he was standing at the open driver's door. Appellant appeared at the sheriff's home on the
night of this offense and reported that his girlfriend was hurt. The interior of the car appellant was
driving was covered in blood. The bloody knife was on the dashboard. The sheriff and other law
enforcement officers went to the location and found the body of the deceased where appellant said
he left her. As he was being driven to jail, Nix volunteered to the Texas Ranger that he had got
some bad dope that made him do what he had done. At the jail, he confessed to a fellow inmate
that he had just killed his "old lady," that he had punched her in the chest with a knife, that he had
just ruined his whole life and was looking at forty to sixty years in prison, that he had been doing
drugs for a long time but had never done anything like what he had done that day. Notably, he
did not say anything to his fellow inmate, the sheriff or the sheriff's wife, or the ranger about
protecting himself from his girlfriend who had pointed a pistol at him. On this evidence, even if
all of counsel's com