In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-106 CR


____________________



RICHARD TULLOS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 159th District Court


Angelina County, Texas


Trial Court Cause No. 22,984






 MEMORANDUM OPINION



 Under a two-count indictment, appellant was convicted for having committed the
felony offenses of Manufacture of a Controlled Substance (Methamphetamine), and
Possession of a Controlled Substance (Methamphetamine) in amounts of one gram or more
but less than four grams. See Tex. Health & Safety Code Ann. §§ 481.112(a), (c);
481.115(a), (c) (Vernon 2003). The jury assessed punishments at confinement for fifteen
years (manufacture), and ten years (possession) in the Institutional Division of the Texas
Department of Criminal Justice. Appellant presents eight issues for review. 

 As issues seven and eight attack the legal and factual sufficiency of the evidence to
sustain the convictions, we address those first. In evaluating legal sufficiency, an appellate
court must view the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found the elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When
conducting a factual sufficiency review, an appellate court asks whether a neutral review of
all the evidence, both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. King v. State, 29
S.W.3d 556, 563 (Tex. Crim. App. 2000) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000)). 

 Appellant's issues seven and eight challenge the sufficiency of the evidence to
establish the alleged amount of methamphetamine manufactured and possessed by appellant. 
The State's chemist testified that his analysis of the various items submitted to him by the
authorities indicated the presence of methamphetamine with a total weight of 2.52 grams. 
State's Exhibit 2 is the laboratory report compiled by the chemist following his analysis of
the various items submitted. According to this report, some of the items submitted tested
positive for the presence of methamphetamine with a total net weight of at least one gram but
less than four grams. Appellant called no witnesses to contradict the chemist's analysis nor
presented any evidence calling into question either the results of the analysis or the weights
recorded. Issues Seven and Eight are overruled. 

 Issue one complains of the introduction of extraneous offense evidence concerning
an arrest in Cherokee County, Texas. The record indicates that extensive testimony was
taken during the State's case-in-chief concerning appellant's arrest for the extraneous offense
of manufacturing methamphetamine at his residence in Cherokee County. The trial judge
carefully considered the admissibility of the Cherokee County extraneous offense evidence. 
Immediately prior to the commencement of the trial, the trial court admonished the State it
would not be permitted to "even get close" to eliciting testimony of the Cherokee County
extraneous offense until the end of the State's case-in-chief. The trial court was adamant that
it needed "to have a full scope of understanding of the necessity" by the State for the
extraneous offense evidence. The extraneous offense testimony was offered after all of the
State's witnesses had testified and been cross-examined regarding the instant offenses, and
the trial court made its decision to admit the evidence at that time. Before considering the
trial court's ruling, we will review the evidence the trial court heard first to place the ruling
in the context the trial judge considered. 

 Tracy Ponder, referred to at trial as appellant's girlfriend, and another person, William
Davis, informed Agent Kent Graham of the Deep East Texas Narcotics Trafficking Task
Force of the possibility of the presence of methamphetamine production at Ms. Ponder's
trailer home. Shortly thereafter, narcotics task-force Agent Graham, along with three other
law enforcement personnel, went to Ms. Ponder's trailer to investigate. Prior to that, Ms.
Ponder had given Agent Graham consent to enter and search her trailer home. Upon entering
the trailer, Agent Graham and two other law enforcement personnel opened a bedroom door
located immediately to the right of the entrance and encountered appellant. Graham noticed
that appellant was holding a piece of chain. Appellant was instructed to drop the chain,
which he eventually did, and he was then handcuffed. 

 Inside the trailer, Agent Graham detected the odor he recognized as being associated
with the production of methamphetamine through the "red phosphorous/iodine reaction
method." A further search of the trailer found no one else present. After opening windows
to ventilate the trailer, a further search turned up a number of items comprising a clandestine
methamphetamine laboratory, as well as methamphetamine itself. A subsequent analysis by
the State's chemist confirmed the presence of methamphetamine in or on various items of the
clandestine laboratory equipment. 

 Appellant complains of the introduction of the extraneous Cherokee County offense 
as not relevant to any of the purposes urged by the State. Appellant acknowledges that a
question as to the identity of the manufacturer was raised, but as the State did not proffer that
purpose to the trial court, he says it should not be available as a basis for admissibility under
Tex. R. Evid. 404(b). Appellant also acknowledges that issues of intent to possess the
methamphetamine, and knowledge by appellant that the substance was contraband, were
elements at issue in the possession case.

 The record reflects appellant's "intent and knowledge" were contested issues, and
"care, custody and control" was disputed. From the opening statement of trial counsel, as
follows, appellant's trial strategy was to show he was "set up" by Tracy Ponder: 

 I think that the evidence will show that Richard Tullos and a girl named
Tracy Ponder were either girlfriend/boyfriend, mistress, ex-girlfriend, ex-mistress at some point and they had been for some time. The evidence will
show that on August 31st of 2001 law enforcement entered a trailer home
rented in the name of Tracy Ponder, not the Defendant. The evidence will
show that while law enforcement found materials commonly used in the
manufacture of meth, he was not making meth, he had no drugs on him.


 The evidence will show that there were numerous people besides Richard
Tullos that had keys to that residence, including several neighbors. If you hold
the State of Texas to what they said they would prove, which is proof beyond
a reasonable doubt, there is no doubt in my mind that you cannot find him
guilty of manufacturing and possession. 


 The trial strategy was explained by trial counsel during his testimony at the motion
for new trial hearing. When trial counsel was questioned about allowing the State to explore,
without objection, the evidence that on the day in question, Tracy Ponder was on her way to
a shelter for battered women at the time she also went to talk to Agent Graham, the following
exchange took place: 

 Q.[State's Attorney] Okay. And in this case his [William Davis'] relationship
with Ms. Ponder only was established to assist her because he happened to
work for the women's shelter?


 A.[Trial Counsel] That's correct.


 Q. And she just happened to go to a women's shelter?


 A. It was my opinion that she went to them and the task force to try to set Mr.
Tullos up.


 Q. And that's the theory that you argued?


 A. Yes.


 Q. So, in order to assert that theory, it would be important to explain why Ms.
Ponder had some motivation to, quote, set Mr. Tullos up?


 A. Sure. 


 This trial strategy was consistently returned to by trial counsel during the course of
the trial as he cross-examined various State's witnesses. Trial counsel asked witnesses if
they were aware of Tracy Ponder's drug habits. Through Agent Graham, trial counsel
established that Graham relied only on what Ms. Ponder and Mr. Davis had told him and had
no independent knowledge of any offenses occurring at Ms. Ponder's trailer prior to that
time. A number of other questions were asked which called into question Tracy Ponder's
credibility as well as the lack of suspicion by the authorities as to the possibility of Ms.
Ponder's complicity in the offenses. 

 The defense trial strategy continued as counsel elicited testimony from appellant's
long-time friend, Lindal "Lee" McMullen. McMullen testified that he and appellant first met
Ms. Ponder while working an out-of-town job in Sulphur Springs and staying at the Best
Western Motel. Ponder was waiting tables at the motel's bar. Three or four weeks later,
McMullen and appellant returned to Angelina County, and at some point Ms. Ponder also
relocated to Angelina County. McMullen stated that he would occasionally visit appellant
at the trailer home of Ms. Ponder in Angelina County, and on certain occasions witnessed
Ms. Ponder ingesting drugs by using a syringe and by smoking a "light bulb." McMullen
also testified that, as far as he was aware, Ponder was never employed outside her home
while living in Angelina County. McMullen also recalled an incident at the motel bar in
Sulphur Springs when Ponder displayed a flask to McMullen and told him she used it "to
cook dope with." She offered to teach McMullen how, but he declined the offer. McMullen
testified that he spent the night at Ms. Ponder's trailer the night before appellant's arrest and
saw no drugs nor drug-manufacturing equipment there; he saw only Ms. Ponder's syringes. 
McMullen indicated that up until the time he left the trailer, about noon on the day of
appellant's arrest, Ponder was not at the trailer. 

 Appellant's wife testified that she had learned of appellant's affair with Ms. Ponder
at some point prior to appellant's arrest for the instant offenses, and that appellant had
confronted Ms. Ponder in the presence of Mrs. Tullos and told Ms. Ponder that he did not
want to see Ms. Ponder anymore and that he was breaking it off with her. 

 Rule 401 defines "relevant evidence" as "evidence having any tendency to make the
existence of any fact that is of consequence to the determination of the action more probable
or less probable than it would be without the evidence." Tex. R. Evid. 401. Evidence of a
person's bad character is generally not admissible for the purpose of showing he acted in
conformity therewith. Tex. R. Evid. 404(b); Montgomery v. State, 810 S.W.2d 372, 386-88
(Tex. Crim. App. 1990) (opn. on reh'g). Evidence of other crimes, wrongs, and acts may,
however, be admissible for other purposes, when it is relevant to some other fact of
consequence in the case. Montgomery, 810 S.W.2d at 387-88. Other purposes, or facts of
consequence, have been recognized to include proof of "elemental facts" (i.e. identity or
intent), and "evidentiary facts" (i.e. motive, opportunity, or preparation) which lead
inferentially to an elemental fact, and as including proof that rebuts a defensive theory. See
Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001) (citing Montgomery, 810
S.W.2d at 387-88). The "other purposes" listed in Rule 404(b) are neither mutually exclusive
nor collectively exhaustive. Montgomery, 810 S.W.2d at 388. 

 At the conclusion of the State's case-in-chief, the trial court conducted an extensive
hearing out of the jury's presence. The State was required to specifically provide its "other
purposes" exceptions to Rule 404(b). Thereafter, also out of the jury's presence, the State
called its witnesses concerning the Cherokee County extraneous offense. At the conclusion
of this offer of proof by the State the following exchange took place culminating in the trial
court's rulings:

 [Trial Counsel]: Judge, I think the one thing that we all agree on, it's
totally discretionary on your part. There are similarities and there are
dissimilarities. . . .


 My primary argument is that on a guilt/innocence phase I feel very
strongly that the prejudicial effect of the introduction of this at this phase of
the trial outweighs any probative value, and would ask the Court to consider
that.


 THE COURT: Well, I'm surely trying to balance that. The difficulty
here is that it is not an undisputed point as to whose all this - - all these
exhibits happened to be in this case. That's - - that's still a disputed point, is
it not?


 [Trial Counsel]: Yes, Your Honor.


 [State]: Yes, Your Honor. I mean - - 


 THE COURT: And so, since that's a disputed point, why would not
same or similar paraphernalia at the Defendant's residence be relevant for the
limited purpose of knowledge of these type of items and the processing using
these type of items, [Trial Counsel]? I mean, isn't that logical?


 [State]: That's - - that's - - 


 THE COURT: That may be an unfair question for you. But the
difficulty here is since there's a disputed point as to who [sic] those are and the
property where it is, the other is relevant for that purpose. 

 Now, I'm inclined to let some of this come in, but I can assure you not
all of it. We're going to talk about some of the limitations.

 The first one is that arrest warrant to go to his property in Cherokee
County, we're not touching that at all. 


 [State]: Can I clarify? Do we need to not say that they were going on
the property with an arrest warrant, or just say, don't talk about what the arrest
warrant was for?


 THE COURT: You don't need either one of them. That he's - - they
are just there on the property of Mr. Tullos. 


 . . . .


 [State]: We won't use the word "arrest" or "warrant"?


 THE COURT: That's right.


 [State]: Okay. Thank you, Your Honor.


 THE COURT: I don't want to get into other extraneous offenses that --
you know, we've got here that we've got October 2nd manufacturing charges,
but I don't want to get into having to defend, well, why was he -- why were
there arrest warrants for assault, I believe I've heard. I don't want [Trial
Counsel] having to defend that as well, the merits of that. So just leave that
out of there.


 . . . .


 THE COURT: All right. Now, gentlemen, please help me out here. 
The case in chief thus far, do we have anything insofar as weaponry in this
case aside from this chain? I mean, candidly -- 


 [State]: No, Your Honor. Just the chain.


 THE COURT: And is there any use of the word "weapons" at all, even,
besides this chain? I didn't -- 


 [State]: No, Your Honor. 


 . . . . 


 THE COURT: Okay. Well, then we're not going there with all of this
other weaponry. So you'll have to redact your exhibits on that. And you may
have weapons in a barn anyway. I mean, I -- we're not going there with that.


 [State]: Okay, Your Honor.


 THE COURT: Number three, counterfeit [money]. I don't know if
we've got any photographs of that, but I heard some testimony. We're not
going there either. We're going to -- it's going to be limited to same or similar
paraphernalia, manufacturing type substances or procedures. 

 Now, [Trial Counsel], I would invite you to have -- well, I'd like to go
ahead today to be reviewing a limiting instruction as to the purpose for which
a jury -- in the limited purpose for which a jury could hear this evidence of
other crimes, wrongs or acts. I don't think that limiting instruction includes
that they must find beyond a reasonable doubt -- or is that solely in the charge,
or do you get them both? Do you get that verbally and in the charge, do you
know?


 [State]: Judge, I know you get it in the charge. I'm not sure about on
a limiting instruction.


 THE COURT: I don't mind giving it verbally. If you want it verbally,
I'll give it verbally, too.


 [Trial Counsel]: Yes, Your Honor. 


 . . . .


 THE COURT: And I can tell you here and now in advance, I will give
you an Article 38.23 Code of Criminal Procedure instruction regarding
inadmissible evidence without -- without any argument from the State, it's
going in there. I don't know -- I haven't seen the final charge proposal, I don't
know if it's in there yet right now. All right?


 [Trial Counsel]: Yes, sir.


 The trial court analyzed the "other purposes" for admitting the extraneous offense
testimony and weighed whether the testimony was more probative than unfairly prejudicial
to appellant. See Tex. R. Evid. 404(b) & 403. The trial court's ruling limited the State as
to what it was permitted to place before the jury from the Cherokee County extraneous
offense witnesses. The trial court did give the jury an oral limiting instruction prior to the
extraneous offense testimony. The trial court's written instructions to the jury also contained
a limiting instruction on the extraneous offense. 

 Issues of who was in care, custody, or control of the clandestine laboratory equipment
and the methamphetamine, and of defendant's intent and knowledge, were in dispute. That
he had the same type of equipment used in the manufacture on his own property in Cherokee
County was relevant to those issues, and made it less likely that he was simply "set up." 


 Because the trial court is in the best position to make the decision on the admissibility
of extraneous offense evidence, an appellate court must review a trial court's decision under
an abuse of discretion standard. Powell, 63 S.W.3d at 438; Montgomery, 810 S.W.2d at 391. 
This standard requires an appellate court to uphold a trial court's decision to admit the
evidence when that decision is within the zone of reasonable disagreement. See id. An
appellate court would misapply the appellate abuse of discretion standard of review if it
reversed a trial court's decision to admit evidence solely because the appellate court
disagreed, if the trial court's decision is within the zone of reasonable disagreement. See id. 
Here the trial court did not abuse its discretion. Issue one is overruled. 

 Issues two through five complain of ineffective assistance of trial counsel in failing
to raise objections at various points of the trial. These issues are governed by Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny. To
prevail on his claims, appellant must first show that trial counsel's performance was
deficient. Id., 466 U.S. at 687, 104 S.Ct. 2052; Mitchell v. State, 68 S.W.3d 640, 642 (Tex.
Crim. App. 2002). Specifically, appellant must prove, by a preponderance of the evidence,
that trial counsel's representation fell below the objective standard of professional norms. 
Mitchell, 68 S.W.3d at 642. Appellant also must show that this deficient performance
prejudiced his defense. Id. As the Court explained in Mitchell, "This means that the
appellant must show a reasonable probability that, but for his counsel's unprofessional errors,
the result of the proceeding would have been different." Id. A "reasonable probability" is
one "sufficient to undermine confidence in the outcome." Id. 

 "To defeat the presumption of reasonable professional assistance, 'any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.'" See Thompson v. State, 9 S.W.3d at 808, 814
(Tex. Crim. App. 1999) (quoting McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1996)). The record contains testimony from trial counsel at the motion for new trial hearing.
We examine each complaint based upon the record and any explanations made during the
motion for new trial hearing by trial counsel. 

 For purposes of our analysis of issue two -- appellant's complaint concerning the
failure to object to evidence of appellant's post-arrest silence -- we assume appellant's
premise, that he was under arrest at the time he was handcuffed by Agent Graham and held
at the scene following the discovery of the clandestine methamphetamine laboratory. 
Appellant directs our attention to two instances in the record to support his complaint that
his counsel should have objected. Both occurred during questioning of Agent Graham by
the State. We reproduce the exchanges as follows:

 Q.[State] Okay. Did he ever explain or say anything in regards to the items
that y'all were finding, you and the other officers? 


 A.[Graham] No, sir. I never talked to him about it. 


 Q. Okay.


 A. I didn't feel like his attitude beforehand would be conducive to an
agreeable conversation with him. 


 . . . .


 Q. Did Mr. Tullos at any time deny the items that you were taking out of the
residence as his, say, hey that's so and so's, or that's not mine?


 A. No, sir.


 [State]: Pass the witness, Your Honor.


 BY [TRIAL COUNSEL]:


 Q.[Trial Counsel] Did he admit to any of those things being his?


 A.[Graham] No, sir.


 Q. In fact, you didn't ask him, did you?


 A. No, sir. I didn't really feel that it would be worthwhile, since he was real
upset. 


 Q. But he was arrested without incident, true?


 A. That's correct. That means we didn't have to fight him to get him in the
car. 


 Trial counsel's responses to questioning by appellate counsel at the motion for new
trial hearing were as follows:

 Q.[Appellate Counsel] Did it surprise you -- did it take you by surprise when
[State's Attorney], the prosecutor, elicited from Agent Graham, the narcotics
officer, testimony regarding Mr. Tullos' post-arrest silence? There's got to be
a shorter way to ask that question, but I don't know what it is.


 A.[Trial Counsel] Which case or incident are you talking about?


 Q. When Tullos was outside the trailer of Tracy Ponder -- and the record says
something like Graham -- the prosecutor asked Graham, did he deny the dope
was his. After it was very clear that Mr. Tullos was under arrest. Did that take
you by surprise?


 A. Not really.


 Q. Okay. Well, but you didn't object to the introduction of evidence about an
accused person's invocation of his Fifth Amendment privilege to remain silent,
right?


 A. That's correct. I may -- may should have, I don't know. 


 Q. Okay. It certainly wasn't any sort of trial strategy to not object to that, was
it?


 A. No.


 Q. All right. And when [State's Attorney] then hammered on that point in his
Closing Argument, he never denied it, never denied it, once again, it wasn't
any trial strategy that you didn't object, was it?


 A. That's correct. Because I believe I countered that no one ever asked to talk
to him.


 Q. Right. Right. But -- but that was not a trial strategy in not objecting, was
it?


 A. That's correct. 


 Although trial counsel denied a trial strategy in not objecting at trial, it appears trial
counsel used the "silence" evidence to counter Agent Graham's depiction of appellant as
being "a little belligerent" at the time he was handcuffed, and to also suggest the officer did
not investigate adequately. When the subject was broached again by the State later in Agent
Graham's testimony, trial counsel immediately countered with confirmation of the fact that
appellant was arrested "without incident." Trial counsel also reminded the jury of this in his
closing argument. During his closing argument, trial counsel turned his client's silence
around and implied that the authorities were either lazy or negligent for failing to ask
appellant for a statement, and for failing to further investigate by asking neighbors who had
access to the trailer. This approach appears consistent with his trial strategy of arguing that
he was "set up" by Tracy Ponder, and that it was not his equipment. 

 Appellate review of trial counsel's representation is highly deferential and presumes
that counsel's actions fell within the wide range of reasonable and professional assistance. 
Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). When evaluating an ineffective
assistance claim, we look at the totality of the representation and the particular circumstances
of the case. Thompson, 9 S.W.3d at 813. The Strickland standard has never been interpreted
to mean that an accused is entitled to errorless or perfect representation. Bridge v. State, 726
S.W.2d 558, 571 (Tex. Crim. App. 1986). From "the totality of the representation and the
particular circumstances of the case," and being "highly deferential" to trial counsel's
representation as we must, we do not find ineffective assistance of counsel on this issue
without which in reasonable probability "the result of the proceeding would have been
different." See Mitchell, 68 S.W.3d at 642. Issue two is overruled.

 In issue three, appellant complains of his counsel's failure to object to the State's
argument regarding post-arrest silence. However, in closing argument counsel may reference
testimony presented at trial. See generally Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim.
App. 1988); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). As in issue
two, being "highly deferential" to trial counsel's representation, there was no ineffective
assistance without which the verdict probably would have been different. Issue three is
overruled. 

 In issue four, appellant complains of his counsel's failure to object to the State's
argument speculating on Tracy Ponder's absence from the trial based on fear of appellant.
We consider the State's closing remarks in the context they were made. Appellant's trial
counsel had presented his closing argument and had strongly emphasized the fact that Tracy
Ponder's whereabouts were unknown, and strongly suggested the reason for her absence was
because of her criminal responsibility for the offenses for which appellant was charged. 
Immediately thereafter, the State's closing remarks begin in the following manner: 

 Ladies and gentlemen, it sure would be nice to have Tracy Ponder here. 
Don't you think the State of Texas would have had her here if we could have
found her. And why was she not here? Maybe because she's scared of
Richard Tullos. She was scared enough of Richard Tullos to leave -- 


 [Trial Counsel]: Judge, I object to his speculation as to why she is not
here.


 [State]: Summation is an argument, Judge.


 THE COURT: Ladies and gentlemen, I'm going to overrule the
objection, but I'm going to instruct you, however, to be guided by the evidence
and the credibility that you have of the witnesses, evaluate the witnesses and
any reasonable inferences you have of that, and not guided by lawyer
summation. 

 You may continue.


 Proper jury argument includes answering the opposing counsel's argument, and
includes reasonable deductions drawn from the evidence. Gaddis, 753 S.W.2d at 398. Trial
counsel's trial strategy was to portray Tracy Ponder as a vengeful ex-girlfriend who had "set
up" appellant by falsely accusing him of manufacturing methamphetamine at her trailer
home. The jury heard evidence that Ms. Ponder had been assisted by William Davis of the
women's shelter, and that she would be going there to live for a period of time. Davis
testified that Ms. Ponder "was worried about her well-being." Trial counsel objected to the
speculative character of the State's argument, but that objection was overruled by the trial
court. Nevertheless, the trial court admonished the jury to keep "lawyer summation" in its
proper context. We do not find ineffective assistance of counsel which undermines
confidence in the verdict. Issue four is overruled.

 In issue five, appellant complains of his counsel's failure to object to the State's
argument inferring appellant threatened Tracy Ponder with violence in order to "shut her up." 
Appellant directs us to where the State continued its closing remarks immediately following
the remarks addressed in issue four, to which trial counsel did lodge an objection. Again, it
would appear that the State was making arguments from the evidence and was attempting to
answer trial counsel's argument, which shifted the focus of responsibility for
methamphetamine in the trailer to Tracy Ponder. Instead of Ponder's absence being an
indication of her involvement in the methamphetamine production, the State suggested to the
jury that appellant was waiting at the trailer, chain in hand, for Ms. Ponder to return in order
to get her to "shut up" about his methamphetamine. This portion of the State's closing
remarks was in response to trial counsel's apparent trial strategy of depicting Ms. Ponder as
having "set up" appellant and of being absent from trial because she was the guilty one. We
find no ineffective assistance without which in reasonable probability the jury verdict would
have been different. See Mitchell, 68 S.W.3d at 642. Issue five is overruled. 

 Issue six involves the same portion of the State's closing remarks as are the focus of
issues four and five. However, issue six is not presented in the context of ineffective
assistance of trial counsel, but as jury argument error by the State. As noted in our discussion
of issues four and five, the State's remarks did fall within an area of proper jury argument,
deductions from the evidence made in response to opposing counsel's argument. See Gaddis,
753 S.W.2d at 398. Issue six is overruled.

 The judgment is affirmed.

 AFFIRMED.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on February 5, 2004

Opinion Delivered June 9, 2004

Do Not Publish


Before McKeithen, C.J., Burgess, and Gaultney, JJ.

DISSENTING OPINION


 I respectfully dissent. I disagree with the majority on issues one and six.

 Concerning issue one, an important point in the analysis is the sequence of the tried
offense and the extraneous offense. The tried offense is alleged to have occurred on August
31, 2001. The extraneous offense occurred October 2, 2002. Generally the logic of seeking
to admit extraneous offenses is: "well, he did it before, so he must have done it this time." (1) 
The logic of this extraneous offense is the converse: "well, he did it afterwards, so he must
have done it this time." While the first instance had some arguable logic, the second has
much less. 

 The state offered the evidence that Tullos manufactured methamphetamine in
Cherokee County to show plan, intent, opportunity, absence of mistake or accident and
knowledge. The court allowed the evidence for the limited purpose of intent, knowledge,
plan and opportunity. It was undisputed that a clandestine methamphetamine lab had existed
in the mobile home and someone had cooked the methamphetamine. Thus identity was the
paramount issue and was the contested issue, (2) yet the extraneous offense was not proffered
nor admitted on the issue of identity. 

 Both the charged offense of manufacture and the subsequent extraneous offense were
circumstantial. Because of this, the admission of the second circumstantial offense was
certainly less probative and thus, more prejudicial than otherwise. I would hold the trial
court committed harmful error in the admission of the Cherokee County offense.

 In issue six the majority holds the prosecutor's jury argument concerning the absence
of Tracy Ponder "fall within an area of proper jury argument, deductions from the evidence
made in response to opposing counsel's argument." The prosecutor's statements, in my
view, were speculation and not any reasonable deduction drawn from the evidence. The
objection should have been sustained.

 In view of issue one, I would reverse and remand for a new trial.

 _______________________________

 DON BURGESS

 Justice


Dissent Delivered

June 9, 2004
1. This has been described as the "doctrine of chances." The Dallas court described the
doctrine as "'--the instinctive recognition of that logical process which eliminates the element
of innocent intent by multiplying instances of the same result until it is perceived that this
element cannot explain them all. Without formulating any accurate test and without
attempting by numerous instances to secure absolute certainty of inference, the mind applies
this rough and instinctive process of reasoning namely that an unusual and abnormal element
might perhaps be present in one instant [sic], but that the oftener [sic] similar instances occur
with similar results, the less likely is the abnormal element likely, to be the true explanation
of them.'" Wiggins v. State, 778 S.W.2d 877, 885 (Tex. App--Dallas 1989, pet. ref'd) citing
Cantrell v. State, 731 S.W.2d 84, 90 (Tex. Crim. App. 1987) quoting Plante v. State, 692
S.W.2d 487, 491-92 (Tex. Crim. App. 1985).
2. The defense attempted to show Tracy Ponder, Tullos' live-in paramour, was the
person who manufactured and possessed the methamphetamine.