



## MEMORANDUM OPINION

No. 04-10-00798-CR

Keith Dwayne **EVANS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR11014A
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice

Delivered and Filed:  March 14, 2012

AFFIRMED

A jury found appellant, Keith Dwayne Evans, guilty of capital murder. The State sought the death penalty, but the jury assessed punishment at life without parole. We affirm.

### BACKGROUND

Trial testimony established that the victim, Mohammed Omar, was working behind the counter at the convenience store he owned on the evening of August 2, 2009. Leon Bailey, a stocker working in the store, testified he saw three men run into the store the night of the

apparent robbery. Bailey testified one man pulled the hood on his sweatshirt to obscure his identity and the other two had on masks. He said the shorter man with the hooded sweatshirt, later identified as appellant, turned in the direction of Omar and fired a gun twice while the other two men stood at the door. Bailey testified he saw Omar go down on the floor. The three men immediately left the store, and Bailey testified he went over to Omar and saw him lying in a pool of blood. Bailey said he ran out of the store and called the police at a gas station nearby. The medical examiner testified at trial that Omar died from a gunshot wound.

Javier Espinoza lived down the street from the convenience store and testified that prior to the shooting that evening, he saw three suspicious men park a truck in the area and run towards the store. Espinoza testified he continued to watch them because they were inappropriately dressed in sweatshirts in warm summer weather. He said he saw one of the men open the door of the store. He saw another man, later identified as appellant, step inside and shoot Omar. Espinoza stated that he called out to his wife to call the police while he watched the three men leave the store and run back past his house to the parked truck. Another neighbor had already given the truck's license plate and description to police; Espinoza's wife gave the police a description of the men and the direction the truck was headed.

Officer Daniel Mireles responded to the police call and testified he was travelling in the same direction as the truck when he saw a sweatshirt lying in the road, later identified as belonging to appellant. After stopping to collect the sweatshirt, Officer Mireles then continued to drive in the truck's direction and eventually he saw a truck matching the description of the vehicle appellant was driving. He then verified the license plate number on the truck and testified that he conducted a stop of the vehicle. According to Officer Mireles, appellant jumped

out of the truck, ran towards the back of the vehicle, and threw himself on the ground. Officer Mireles then arrested appellant.

## SUFFICIENCY OF THE EVIDENCE

In his first issue on appeal, appellant contends the evidence is legally insufficient to support his conviction for capital murder because it does not establish he intentionally caused Omar's death. In a sufficiency challenge, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the charged offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010). We defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* at 899.

At trial, the jury charge included both an instruction on capital murder and an instruction on the lesser-included offense of felony murder. "The distinguishing element between felony murder and capital murder is the intent to kill." *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999). Capital murder includes an intentional murder committed in the course of a robbery. *Id.* Intent is most often proven through circumstantial evidence surrounding the crime, and a jury can infer intent from a defendant's conduct, including his acts and words. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). On the other hand, felony murder is an unintentional murder committed in the course of a felony. *Fuentes*, 991 S.W.2d at 272.

Appellant contends he was guilty only of felony murder and not capital murder because he did not intend to kill Omar. Appellant points to his own testimony in which he asserts robbery was his only objective and the murder was never anticipated. Appellant claims he did not own the gun that was used in the shooting and he was only handed the weapon by one of his

cohorts in the parking lot right before they entered the store. Appellant testified that he only fired in the direction of Omar after he saw Omar retrieve a weapon of his own. Appellant explained at trial that he was frightened after seeing Omar's weapon and only fired the shots to get away.

Nonetheless, after a review of the record, we believe the jury was presented with ample evidence to support its ultimate finding of capital murder. The jury watched the convenience store's surveillance video, which shows appellant coming in the door, raising the weapon, and firing in Omar's direction. This video also shows appellant looking at Omar and firing the weapon a second time before he was pulled out the door by his cohorts. As a result, the jury could infer the requisite intent to cause death from appellant's use of a deadly weapon in a deadly manner—thereby rejecting the felony murder instruction. *Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986) ("The specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result."). Furthermore, appellant's use of a deadly weapon in a deadly manner raises an inference of intent to kill. *Id.* at 581; *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993).

Additionally, Espinoza's testimony contradicts appellant's claim that he was handed the weapon right before entering the store—Espinoza testified he saw appellant pull the gun out of his pants. As a result, the jury could have found appellant's trial testimony was not credible and rejected appellant's claim that the shooting was not intentional because of the inconsistency in his testimony as compared to Espinoza's. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile

conflicts in the evidence."). Further, although appellant claims he had no intent to kill Omar prior to entering the store, "[t]here is no requirement in the case of capital murder committed in the course of a robbery, that the intent to cause death be premeditated or formulated prior to the commission of the robbery." *Rousseau v. State*, 855 S.W.2d 666, 674 (Tex. Crim. App. 1993). Instead, "[t]he offender must have only formulated an intent to cause death when he actually commits the murder." *Id.* Also, the jury could have rejected appellant's claim that the shooting was just a "reaction" to appellant seeing Omar's weapon because the trial testimony established that appellant fired not one, but two shots in Omar's direction.

Thus, although appellant claimed he did not intentionally shoot Omar, there was ample evidence from which the jury could infer he intentionally caused Omar's death. After viewing the evidence in the light most favorable to the verdict and because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony, we conclude a rational trier of fact could have found appellant intentionally murdered Omar, thereby rejecting the instruction on felony murder.

### JURY SELECTION

In his second issue on appeal, appellant contends the trial court erred in refusing to permit the retroactive exercise of a peremptory strike. After the individual voir dire examination of a potential juror, both parties accepted that person as juror number three. Then, following examination of the entire venire and after the jury was selected, appellant requested on two different occasions that he be permitted to retroactively exercise a peremptory challenge against juror number three. The trial court refused both requests and stated:

> Okay, and basically, what you're asking to do is go back retroactively and use the strike and whether it's provided for constitutionally or not, we've been in this process [for a month]. If I did it for you, the State still has two strikes left and that would open it up to them and we've already told these people they are on the

jury and they have made arrangements and both sides accepted that individual back then.

We first note that a trial court has wide discretion over the voir dire process. *Bridge v. State*, 726 S.W.2d 558, 564 (Tex. Crim. App. 1986); *see also Valle v. State*, 109 S.W.3d 500, 504 (Tex. Crim. App. 2003) ("Trial courts have broad discretion to control the conduct of jury selection."). Additionally, the Legislature has prescribed the procedure for challenges for cause and peremptory strikes by the parties in a capital case. TEX. CODE CRIM. PROC. ANN. art. 35.13 (West 2011). The relevant statute reads, "A juror in a capital case in which the state has made it known it will seek the death penalty, held to be qualified, shall be passed for acceptance or challenge first to the state and then to the defendant. Challenges to jurors are either peremptory or for cause." *Id.* Under this procedure, "the defendant must exercise peremptory challenges upon the examination of individual prospective jurors without the opportunity to evaluate the panel as a group." *Janecka v. State*, 739 S.W.2d 813, 833 (Tex. Crim. App. 1987). This "scheme for jury selection in capital murder cases is not violative of state or federal due process or equal protection." *Id.* at 834. Accordingly, we conclude the trial court did not err in denying appellant an untimely peremptory challenge because the trial court followed the statutory procedure throughout jury selection. *Robison v. State*, 888 S.W.2d 473, 484 (Tex. Crim. App. 1994), *cert. denied,* 515 U.S. 1162 (1995).

## ADMISSIBILITY OF EVIDENCE

In his last issue on appeal, appellant argues the trial court erred by overruling his objection that the State's slow-motion version of the video of the shooting and the still-frame photographs, all recorded by the store surveillance camera, violate Texas Rule of Evidence 403 and should not have been shown to the jury.[1] Appellant claims the slow-motion version of the

---

[1] Appellant does not dispute the relevancy or the authentication of the video or the photographs.

video and the photos do not accurately depict the events that occurred because they only capture a still frame or picture every tenth of a second.[2] As a result, appellant asserts the slower version of the video and the still-frame shots are not conclusive on the issue of whether appellant "'lunged' forward and how much time elapsed from the time [Omar] pulled a weapon out toward [appellant], because it would not record a brief stop that took place within .10 seconds."

We review a trial court's ruling on the admission of evidence under an abuse of discretion standard and we will not reverse absent a clear abuse of discretion. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). If the trial court's decision to admit the evidence lies within the zone of reasonable disagreement, then we will uphold the decision. *Id.*

During the State's case-in-chief, the State offered into evidence as State's exhibit 1A, a videotape of the murder created from the surveillance camera at the convenience store on the night of the shooting.[3] The video is divided into four quadrants, each containing a different camera angle and all four playing simultaneously throughout the video. The video plays in real-time speed and contains the timing and minutes of the shooting. The State then offered into evidence State's exhibits 2 and 3 which depict the same events in State's exhibit 1A. However, the video in each of these exhibits was not divided into quadrants but, rather, each depicted a single camera angle on the full screen. Additionally, the speed in these exhibits was slowed. The State also offered into evidence approximately fourteen photographs retrieved from the surveillance camera that showed the same shots as recorded on the videos. Appellant made

---

[2] Appellant also asserts the video may have been altered by the State when it was converted from digital format and saved on a DVD and later to a flash drive; however, there is nothing to indicate the State manipulated or altered the digital recording made by the surveillance camera.

[3] The camera records a still frame or picture in increments of a tenth of a second. As a result, the surveillance camera does not record full motion video.

several objections to the videos and the pictures, which the trial court overruled. The jury was shown all three videos and the photos.

Our review of the videotapes and pictures indicates that all of these exhibits depict the exact same event from the same surveillance system—the moments before, during, and after Omar's murder. The jury viewed all three videos and saw the pictures that were developed directly from the camera shots taken by the surveillance video. All of this amounted to the jury viewing the exact same event from the same surveillance system.[4]

Further, the jury was well aware that the video recorded in tenth of a second increments because the witness who installed the camera testified at trial that the video system is "what they call 10th of a second recording." This witness also testified that the pictures and video admitted into evidence from the surveillance camera recorded a time "slightly beyond" the previous image. As a result, the jury, as factfinder, could make their own inferences as to what took place during the brief tenth of a second between each frame. *Benavides v. State*, 763 S.W.2d 587, 588–89 (Tex. App.—Corpus Christi 1988, pet. ref'd) (determining a jury can "draw reasonable inferences and make reasonable deductions from the evidence as presented to it within the context of the crime").

Appellant has not established how the slower version videos and the pictures are more prejudicial than the real-time video. Thus, we cannot say the trial court's decision to admit the slow-motion videos and single-frame photos lies outside the zone of reasonable disagreement and, therefore, we must uphold the trial court's decision. *See Apolinar*, 155 S.W.3d at 186. Accordingly, we conclude the trial court did not abuse its discretion by admitting the videotapes and photos.

---

[4] Appellant does not challenge the real-time video or the cumulativeness of the evidence on appeal.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the judgment of the trial court.


Sandee Bryan Marion, Justice

Do not publish